ASSOCIATED INSURANCE AGENCIES, INC., demandante y recurrido, *v.* COMISIONADO DE SEGUROS DE PUERTO RICO, demandado y peticionario.

Núms.: CC-96-39 *Resueltos:* 26 de noviembre de 1997
 CE-94-552

426

Pedro A. Delgado, Procurador General, José Luis González Castañer y Carlos M. Hernández López, abogados del peticionario; Ramón A. Cancio y Carlos R. Ríos Gautier, abo-

gados de la recurrida Associated Insurance Agencies, Inc.; *Julio César Vega Acosta*, abogado de los recurridos S.L. Caribbean Insurance Agency, Inc. y *Samuel López Pabón*.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

¿Cuál es el alcance de la revisión judicial de una determinación de una agencia administrativa en la cual se suspende provisionalmente una licencia de una entidad que hace negocios en un área estrictamente reglamentada por el Estado? En los casos particulares ante nos, el Comisionado de Seguros de Puerto Rico (en adelante el Comisionado) solicita la revocación de dos (2) sentencias, una del Tribunal de Circuito de Apelaciones y otra del extinto Tribunal Superior, que dejaron sin efecto las suspensiones de las licencias de Associated Insurance Agencies, Inc. (en adelante Associated Insurance) y de S.L. Caribbean Insurance Agency (en adelante S.L. Caribbean) por violaciones crasas del Código de Seguros. Por entender que las sentencias recurridas debilitan la facultad del Comisionado para supervisar la industria y ejercer su jurisdicción disciplinaria cuando se violen disposiciones del Código de Seguros, revocamos.

## I

Los hechos de los casos consolidados que dieron lugar a los recursos ante nos no están en disputa.

A. *Associated Insurance Agencies, Inc. v. Comisionado de Seguros*

En junio de 1990 la Oficina del Comisionado de Seguros notificó a Associated Insurance, como Agente General de Seguros, mediante copia, acerca de una querella presentada en su contra por el Sr. Inocencio Morales Ortiz. Se le concedió el término de quince (15) días para contestar la

querella, apercibiéndole de que si no comparecía se procedería a sancionarle de conformidad con las disposiciones del Código de Seguros, por obstruir el poder como investigador del Comisionado.

En vista de que Associated Insurance no contestó la querella, el 20 de noviembre de 1990 el Comisionado le impuso una multa administrativa de doscientos cincuenta dólares ($250) y le ordenó nuevamente que contestase la querella. Associated Insurance pagó la multa, pero no contestó la querella. Tres (3) años más tarde, el 17 de noviembre de 1993, el Comisionado reactivó la querella; emitió una orden para imponerle otra multa administrativa a Associated Insurance de quinientos dólares ($500) por no haber contestado la querella y le concedió el término de veinte (20) días para contestar. Associated Insurance pagó la multa, pero no contestó la querella. El 9 de abril de 1994 el Comisionado emitió otra orden, en la cual le impuso una multa adicional de quinientos dólares ($500) a Associated Insurance por no contestar la querella y le advirtió, además, que si dentro del término de veinte (20) días no satisfacía la multa ni contestaba la querella debía comparecer a una vista administrativa para mostrar causa por la cual no debía suspendérsele o revocársele la licencia de Agente General por incumplimiento con las órdenes del Comisionado.

Habiendo transcurrido el término concedido, sin que Associated Insurance contestara la querella ni pagase la multa, se celebró la vista administrativa, a la cual Associated Insurance no compareció. En vista de este incumplimiento, el Comisionado dictó una resolución para dejar sin efecto la última sanción de quinientos dólares ($500) y para suspender la licencia de agente general de Associated Insurance por el término de un (1) año debido a "su conducta de abierto desafío y franco menosprecio a la autoridad del Comisionado". Apéndice 4, pág. 42.

Una vez fue notificada de su suspensión, Associated Insurance solicitó reconsideración y simultáneamente contestó la querella. Alegó, en síntesis, que si bien era cierto que no había contestado la querella, ello se debía a que el abogado del querellante le había informado a la Oficina del Comisionado que había entablado una acción judicial y, por esa razón, Associated Insurance había optado por dirigir su atención a la defensa en el pleito ante el tribunal. Expresó que el Tribunal Superior, Sala de Aibonito, había desestimado la demanda contra Associated Insurance por no tener responsabilidad en relación con la querella. Admitió que no existía justificación para haber ignorado las órdenes del Comisionado y que ello constituía una falta seria. Solicitó que se le redujera la sanción impuesta, toda vez que la suspensión equivaldría a "sacarlo permanentemente del negocio de seguros".

En reconsideración, el Comisionado modificó la sanción y redujo el término de la suspensión a cuatro (4) meses, en lugar de un (1) año. En su decisión, el Comisionado tomó conocimiento oficial de otras resoluciones relacionadas con Associated Insurance que reflejaban un patrón de incumplimiento con las órdenes del Comisionado y un historial de multas durante los últimos veinte (20) años. En relación con esto último, Associated Insurance presentó una moción titulada Solicitud de Vista para Subsanar Violación del Debido Proceso de Ley. El Comisionado no atendió la solicitud.

Inconforme con la decisión final del Comisionado, Associated Insurance presentó una solicitud de revisión judicial ante el entonces Tribunal Superior. Dicho foro dictó sentencia en la que confirmó la decisión del Comisionado. Oportunamente, Associated Insurance solicitó una reconsideración y planteó que la suspensión de la licencia por cuatro (4) meses equivaldría a un cierre total y tendría que dejar cesantes a sus veintiséis (26) empleados, muchos de

los cuales llevaban trabajando con Associated Insurance desde su fundación en 1968.

El foro de instancia accedió a esta petición y dictó una sentencia enmendada para dejar sin efecto la anterior e imponer como sanción una multa administrativa a Associated Insurance ascendente a veinte mil dólares ($20,000).

Inconforme con dicha sentencia, el Comisionado presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. Por su parte, dicho foro confirmó la decisión del tribunal de instancia. Preocupado por el efecto de estas decisiones sobre su poder reglamentario sobre la industria de seguros, el Comisionado apeló ante esta Curia. En su recurso sostiene que el Tribunal de Circuito de Apelaciones erró al revocar la suspensión temporera de la licencia de Associated Insurance y sustituir la sanción por una multa.

B. *S.L. Caribbean Insurance v. Comisionado de Seguros*

En febrero de 1992 S.L. Caribbean certificó a los contadores externos de la Corporación Insular de Seguros una deuda en concepto de primas adeudadas que ascendía a la cantidad de dos millones ciento sesenta y cuatro mil seiscientos treinta y tres dólares ($2,164,633). Posteriormente, S.L. Caribbean certificó a otros auditores, contratados por el Comisionado para examinar a la Corporación Insular de Seguros, que la referida deuda era realmente por una cantidad inferior, seiscientos treinta y cuatro mil ciento treinta y seis dólares con ocho centavos ($634,136.08).

En vista de esta discrepancia, el Comisionado ordenó una investigación de las operaciones y los negocios de Samuel López Pabón y S.L. Caribbean para determinar si éstos se habían realizado conforme a las disposiciones del Código de Seguros. Como resultado de la investigación, el Comisionado concluyó que S.L. Caribbean "certificó a sabiendas una cantidad que le constaba era errónea en

ánimo de defraudar a esta oficina para que el asegurador [Corporación Insular de Seguros] reflejara una situación económica que no era la verdadera". De igual forma concluyó que S.L. Caribbean había obstaculizado la investigación ordenada por el Comisionado, al negarse a suministrar la información requerida por los auditores. En la orden el Comisionado describe esta actitud como "un desafío a la autoridad del Comisionado" que ameritaba una sanción severa. Además, a la luz de estos hallazgos, el Comisionado concluyó que "el agente Samuel López Pabón no es persona competente ni confiable para desempeñarse en el negocio de seguros".

Considerando la naturaleza de estas violaciones, el Comisionado suspendió las licencias de López Pabón y de S.L. Caribbean por el término de cinco (5) años.

A petición de ambas partes se celebró una vista administrativa. Concluida ésta, el Comisionado confirmó su decisión. No obstante, en reconsideración, el Comisionado eliminó todas las determinaciones relacionadas con las imputaciones de obstrucción de la labor investigativa de su Oficina, pero reafirmó las conclusiones sobre la entrega intencional de certificaciones erróneas con el propósito de presentar un cuadro irreal de la situación financiera de la Corporación Insular de Seguros. Por considerar que estas determinaciones demostraban violaciones serias a las obligaciones de un agente, el Comisionado reiteró su determinación de que López Pabón era "una persona no competente y no confiable para desempeñarse en el negocio de seguros". No obstante, al considerar todos los elementos implicados en este caso, el Comisionado redujo a un (1) año la suspensión de la licencia de la agencia general de S.L. Caribbean y la del agente López Pabón. Así modificada, se confirmó la referida resolución.

Inconforme, S.L. Caribbean y López Pabón acudieron al entonces Tribunal Superior. Después de varios incidentes procesales, dicho foro revocó la decisión del Comisionado y

en su lugar impuso una multa de cinco mil dólares ($5,000). El tribunal de instancia reconoció que López Pabón y S.L. Caribbean demostraron una falta de cuidado y de diligencia en su negocio, pero dejó sin efecto las suspensiones dé las licencias por considerar que la sanción impuesta era "desproporcionada a la falta cometida". El tribunal de instancia explicó que la suspensión de la licencia por un (1) año "dejar[á] a sus empleados sin ingreso y sin sustento para ellos y sus familiares". Además, señaló que la suspensión "significará para el señor López Pabón un disloque en las relaciones y contactos en el negocio de seguros que podría eliminarlo de tal negocio para siempre".

En su petición de *certiorari*, el Comisionado nos solicita que revoquemos la sentencia del entonces Tribunal Superior. Sostiene que dicho foro se equivocó al sustituir el criterio del Comisionado, privando "a éste de su facultad de determinar la sanción adecuada para poner en vigor las disposiciones del complicado esquema regulador que establece el Código de Seguros". Además, expresa que:

> Esta situación es más pertubadora aún cuando se considera que existen admisiones del señor López Pabón en el récord administrativo que sostienen que S.L. Caribbean Insurance Agency, Inc. confirmó a sabiendas balances incorrectos de primas adeudadas a la Corporación Insular de Seguros en violación a sus obligaciones como agente. Por ende, de sostenerse la sentencia recurrida se habrá minado la facultad del Comisionado de Seguros para supervisar la industria de seguros y disponer las necesarias para disuadir violaciones al Código de Seguros, particularmente aquellas de la magnitud de las cometidas por los recurridos.

Los dos (2) recursos ante nuestra consideración cuestionan el alcance de la facultad que tienen los tribunales para revisar sanciones impuestas por el Comisionado a entidades que operan con licencias concedidas para hacer negocios en una industria altamente reglamentada. Además, plantean una controversia de gran importancia para las funciones investigativas y adjudicativas del Comisionado y

otras agencias administrativas con funciones análogas. Como las controversias centrales en ambos son iguales, los consolidamos y oportunamente los expedimos.

II

■ Al evaluar el caso de autos tenemos presente que la función principal de la revisión judicial es asegurarse de que las agencias administrativas con poderes adjudicativos actúen dentro de la facultad delegada por la Asamblea Legislativa y que cumplan con los preceptos constitucionales, particularmente los dictados por el debido proceso de ley. El control judicial de la actuación administrativa garantiza que los ciudadanos tengan un foro a donde recurrir para vindicar sus derechos y obtener un remedio frente a los organismos administrativos. "[E]sto a su vez impone una obligación especial a los tribunales de ser especialmente cuidadosos en revisar las decisiones en este campo para proteger la ciudadanía contra posibles actuaciones arbitrarias." *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 223–224 (1974).

■ La Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2175, rige y define el alcance de la revisión judicial de las decisiones adjudicativas de las agencias administrativas, para lo cual dispone:

El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.
Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
Las conclusiones de derecho serán revisables en todos sus aspectos por el Tribunal.

El ámbito de revisión consagrado en esta sección dispone dos (2) tipos de revisión de las decisiones adjudicativas. En lo que respecta a cuestiones de derecho,

la L.P.A.U. establece que los tribunales podrán revisar completa y absolutamente las conclusiones de derecho de las agencias administrativas.

██ De ordinario, al revisar las decisiones de las agencias, los tribunales brindan mucha deferencia y respeto a las interpretaciones del estatuto que sean efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento:

> Ello es así por cuanto dichos organismos cuentan con una vasta experiencia y conocimiento (*expertise*) en relación con la materia con la que bregan día tras día. La interpretación que del estatuto éstos hagan y los fundamentos que aducen en apoyo de la misma, resultan de gran ayuda para los tribunales de justicia al éstos encontrarse en posición de pasar juicio sobre la corrección o no de las decisiones emitidas por dichos organismos. *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183, 189 (1984). Véanse, además: *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543 (1993); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993).

██ Sin embargo, aunque en el pasado hemos reiterado esta doctrina en muchas ocasiones, ella no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. Cuando la interpretación del estatuto que hace la agencia produzca resultados incompatibles o contrarios al propósito de la ley, o afecte sustancialmente derechos fundamentales, el criterio administrativo claramente no podrá prevalecer:

> Ahora bien, la deferencia que se preste debe estar predicada realmente en un peritaje superior demostrado por la agencia. Si las decisiones de las agencias no cumplen con esas expectativas, entonces es necesaria una mayor participación de los tribunales. Tal incumplimiento justifica la intervención judicial porque pone de manifiesto que hay falta de entendimiento del objetivo y de la política pública a ser alcanzada y desarrollada por el organismo administrativo. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Ed. Forum, 1993, pág. 505.

En cuanto a las determinaciones de hecho de las agencias administrativas, la Sec. 4.5 de la L.P.A.U., *supra*, recoge la norma tradicional de evidencia sustancial, desarrollada y reiterada por este Tribunal y por el Tribunal Supremo de Estados Unidos. Véase *Metropolitana, S.E. v. A.R.Pₑ.*, 138 D.P.R. 200 (1995). Esta norma nos impone la obligación de examinar la totalidad de la prueba sometida a la agencia según consta en el expediente del procedimiento adjudicativo.[1]

■ En cuanto a la determinación de sustancialidad, hemos señalado que es aquella evidencia "que una mente razonable pueda aceptar como adecuada para sostener una conclusión". *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). La evidencia debe ser considerada en su totalidad, incluyendo tanto aquella que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido.

■ A tenor de esta norma, los tribunales limitan su intervención a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. De existir más de una interpretación razonable de los hechos, los tribunales de ordinario deben sostener la selección de la agencia y no sustituir su criterio por el de la agencia. *J.R.T. v. Línea Suprema, Inc.*, 89 D.P.R. 840 (1964).

■ Para que los tribunales puedan revisar de esta forma una decisión cuasi adjudicativa de una agencia administrativa es indispensable que las agencias expresen

---

[1] En este contexto utilizamos la palabra expediente y no *récord*. Nos referimos al expediente oficial de la agencia como el que contiene cualesquiera de los documentos enumerados en la Sec. 3.18 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2168. A pesar de que dicha enumeración no es taxativa, ella debe entenderse como limitada a aquellos documentos que pasen por el cedazo de la agencia, según aconteció fielmente durante el trámite procesal adjudicativo. Véase D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogota, Ed. Forum, 1993, págs. 92–93.

claramente sus determinaciones de hecho y las razones para sus decisiones, incluyendo los hechos básicos de los cuales, a través de un proceso de razonamiento e inferencia, se derivan aquellos. Las decisiones deben reflejar que el organismo ha considerado y resuelto los conflictos de pruebas, y sus determinaciones deben describir tanto los hechos probados como los que fueron rechazados. Evidentemente no pueden ser *pro forma* y deben reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración.

Por otro lado, cuando se le otorga a una agencia administrativa el poder de adjudicar controversias, como regla general, también se le concede el poder para emitir sanciones. En estos casos también se le reconoce mucha discreción para seleccionar las sanciones que le ayuden a cumplir con los objetivos estatutarios, siempre que haya obrado dentro del marco de su conocimiento especializado y de la ley. Al revisar estas decisiones, los tribunales también han brindado mucha deferencia a las agencias administrativas a tenor del principio de que la Asamblea Legislativa le ha delegado la facultad y la discreción de seleccionar la manera de implantar la ley. Precisamente es la vasta experiencia y el conocimiento especializado que las agencias adquieren en el proceso de la reglamentación, la que justifica esta norma. *Srio. D.A.C.O. v. J. Condóminos C. Martín*, 121 D.P.R. 807 (1988).

Ésta ha sido también la doctrina del Tribunal Supremo federal y de los tribunales estatales. Por ejemplo, en un caso análogo al de autos, *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182 (1973), el Tribunal Supremo de Estados Unidos revocó a la corte de apelaciones y dejó en vigor una suspensión temporera de una licencia de una entidad que violó un reglamento federal. En ese caso, el Tribunal Apelativo federal había revocado la decisión del Secretario de Agricultura por considerarla muy severa. Al revocar a la corte de apelaciones, el Tribunal Supremo federal formuló

la norma siguiente sobre el alcance de la revisión judicial de las sanciones impuestas por las agencias federales:

> The applicable standard of judicial review in such cases required review of the Secretary's order according to the "fundamental principle ... that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence' ". *Butz v. Glover Livestock Comm'n Co.*, supra, pág. 185.

Según esta doctrina, si la decisión administrativa está basada en evidencia sustancial y no es *ultra vires* y tiene, además, una relación razonable con los actos que se quieren prohibir, los tribunales brindarán considerable deferencia a la sanción impuesta por las agencias. Véase B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown & Co., 1991, Sec. 10.21, págs. 663–665. La revisión judicial de este tipo de actuación administrativa, de ordinario, no depende de si el tribunal considera que la sanción sea muy fuerte o no. La determinación de si la sanción es la que corresponde imponer en cada caso es esencialmente de naturaleza administrativa. En la implantación de la ley y consecución de los objetivos legislativos, es la agencia, y no los tribunales, la que debe determinar cuál es la sanción aplicable en las distintas situaciones fácticas:

> The fashioning of an appropiate and reasonable remedy is for the Secretary, not the court. The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in (his) choice of the remedy'. *Butz v. Glover Livestock Comm'n Co.*, supra, págs. 189–190.

La doctrina federal reconoce que la intención legislativa al delegar amplios poderes a una agencia para imponer sanciones requiere que también se le otorgue mucha discreción. No olvidemos que la agencia es la que, día a día implanta la ley orgánica y los reglamentos y es la que, por su conocimiento, está en la mejor posición de establecer cuál es el efecto de la violación, sobre todo en el sector

reglamentado, y cuáles son los intereses que mejor se protegen con su actuación administrativa. De esta manera, también se asegura cierto grado de uniformidad y coherencia en la imposición de sanciones y en la implantación de la ley. *Kulkin v. Bergland,* 626 F.2d 181, 186 (1er Cir. 1980).

Sin embargo, esto no significa que los tribunales se crucen de brazos al revisar estas decisiones. En particular, tienen que evitar que los administradores actúen ilegalmente o cometan arbitrariedades al imponer sanciones. Con estos propósitos procede que evaluen si existe evidencia sustancial para sostener la sanción. *Com. of Mass., DPW v. Secretary of Agriculture,* 984 F.2d 514 (1er Cir. 1993). Cuando se demuestra que no hay prueba en el expediente para justificar la sanción o que existe otra en el *récord* que claramente reduzca o menoscabe el peso de la evidencia que sostiene la determinación administrativa, los tribunales pueden revisar la decisión con el fin de impedir actuaciones caprichosas. *Ferguson v. U.S. Dept. of Agriculture,* 911 F.2d 1273 (8vo Cir. 1990).

Sin embargo, esto no significa que se sustituya el criterio del administrador por el del juez. En esencia, este tipo de revisión judicial le otorga a la agencia la deferencia correspondiente, pero reconoce que existe una obligación de asegurar que la sanción no exceda lo permitido por ley ni que constituya un claro abuso de discreción:

It is well established that the determination of the proper disciplinary action to be taken to promote efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency. Indeed, deference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is "so harsh and unconsciously disproportionate to the offense that it amounts to an abuse of discretion". (Citas omitidas.) *Parker v. U.S. Postal Service,* 819 F.2d 1113, 1116 (Fed. Cir. 1987). La jurisprudencia de la mayoría de las jurisdicciones de Estados Unidos coincide con estos criterios. Véanse: *Lillis v. Department of Health Services,* 564 A.2d 646,

649 (1989); *Bonneville Auto Ins. Co. v. Ins. Div., etc.*, 632 P.2d 796 (Ore. 1981); *Hunt v. Washington Fire and Marine Insurance Co.*, 381 P.2d 844 (Okl. 1963).

Entre los procedimientos adjudicativos sujetos a esta revisión judicial limitada se encuentran las decisiones en las cuales se deniegan, revocan o suspenden licencias. 3 L.P.R.A. secs. 2181–2184. También aplica a los procedimientos mediante los cuales una agencia impone penalidades por violación de un estatuto o reglamento que establece las normas que rigen esa industria o negocio.

Desde hace más de ochenta (80) años se ha validado la delegación a agencias administrativas de este poder de imponer penalidades. También se ha reconocido que los administradores tienen poderes amplios para imponer sanciones con el propósito de poner en vigor las leyes y los reglamentos aplicables y de lograr los objetivos de la agencia. Véanse: 1 *Culp Davis and Pierce, Administrative Law Treatise 3d* Sec. 2.8 (1994); W. Gellhorn, *Administrative Prescription and Imposition of Penalties*, Wash. U.L.Q. 265, 271 (1970).

En el caso particular de las agencias que regulan sectores económicos mediante el poder de conferir licencias, también se ha reconocido tradicionalmente su facultad para denegar, revocar o suspender este permiso. Como la concesión de las licencias es esencialmente el poder más importante que tiene la agencia administrativa, y su otorgación está condicionada al cumplimiento con unos requisitos legales, la facultad para revocarla es uno de los instrumentos más efectivos para asegurar que las entidades o personas reguladas cumplan estrictamente con las disposiciones legales y los reglamentos promulgados por la agencia correspondiente. Véase L.J. Jaffee, *Judicial Control of Administrative Action*, Boston, Ed. Little, Brown and Co., 1965, pág. 114.

## III

■ La norma de otorgar gran deferencia y respeto a las interpretaciones de los organismos administrativos especializados cobra más importancia cuando se revisan los fallos de ciertos organismos que tienen a su cargo la reglamentación de complejos procesos técnicos, sociales o económicos. *South P.R. Sugar Co. v. Junta*, 82 D.P.R. 847 (1961). Uno de estos sectores es el de seguros.

■ Con el propósito de proteger al consumidor contra prácticas indebidas, el Estado tiene un legítimo interés en reglamentar esta industria tan compleja e importante. *Comisionado de Seguros v. Bradley*, 98 D.P.R. 21, 29 (1969). Por su importancia en el país y su complejidad, el Estado ha reglamentado extensamente los negocios de seguros a través del Código de Seguros. Por nuestra parte, siempre hemos considerado que este es un sector "investido de interés público". *Maryland Cas'y Co. v. San Juan Rac'g Assoc., Inc.*, 83 D.P.R. 559, 563 (1961).

Con el propósito de fiscalizar cuidadosamente este sector, el Código de Seguros creó el cargo de Comisionado con amplios poderes investigativos y con la facultad para aprobar reglamentos y adjudicar controversias. 29 L.P.R.A. sec. 201 *et seq.* "Naturalmente esto impone una seria responsabilidad al Comisionado de Seguros de velar porque se cumplan estrictamente las normas y principios contenidos en el Código de Seguros." *Comisionado v. Anglo Porto Rican*, 97 D.P.R. 637, 641 (1969).

■ Uno de los aspectos de esta extensa reglamentación lo constituye la imposición del requisito de poseer una licencia para poder desempeñarse como asegurador o como agente de seguros. El Código de Seguros, específicamente, prohíbe que una persona actúe como asegurador y contrate negocios de seguros en Puerto Rico, a menos que esté debidamente autorizada para ello por el Comisionado. 26 L.P.R.A. sec. 303. Además, "[n]inguna persona actuará o se

hará pasar en Puerto Rico como agente, corredor, solicitador, ajustador o consultor de seguros, a menos que posea licencia para ello". 26 L.P.R.A. sec. 906(1). Tampoco podrá gestionar o aceptar ninguna clase de seguros o colocar algún negocio con un asegurador, a menos que esté expresa-· mente autorizado por el Comisionado. 26 L.P.R.A. sec. 906(2) y (3).

 Para garantizarle al Comisionado los poderes necesarios para poner en vigor las normas y prohibiciones del Código de Seguros, la Asamblea Legislativa le asignó poderes específicos para denegar, suspender o revocar la licencia de un asegurador, 26 L.P.R.A. secs. 320–321, o de un corredor o de un agente general, 26 L.P.R.A. sec. 946, y para imponer multas por cualquiera de las causas especificadas en el Código de Seguros,([2]) 26 L.P.R.A. secs. 321a y 948(1)(b). Cualquiera de dichas sanciones podrá ser en adición a cualquiera otra provista por ley. 26 L.P.R.A. sec. 948(2).

Entre los motivos para suspender o revocar una licencia la ley incluyó lo siguiente:

(b) Por violar intencionalmente, dejar de cumplir o participar a sabiendas en la violación de cualquier disposición de este título, o de cualquier regla, reglamento u orden legal del Comisionado.

(f) Si en el curso de sus negocios con arreglo a licencia, el tenedor ha demostrado ser, y el Comisionado así lo considera, incompetente, no confiable o fuente de perjuicio y pérdidas para el público. 26 L.P.R.A. sec. 946(1)(b) y (f).

 Finalmente, para asegurar su efectividad, el Código concedió amplios poderes investigativos al Comisio-

---

([2]) En cuanto a las multas administrativas que puede imponer el Comisionado a los agentes, corredores, solicitadores, ajustadores y consultores de seguros, el Código de Seguros dispone que la multa no excederá de quinientos dólares ($500) por cada falta y que el total de multas impuestas por diferentes faltas no excederá de cinco mil dólares ($5,000). 26 L.P.R.A. sec. 948(1)(6).

La multa que podrá imponerse a los aseguradores no podrá exceder de cinco mil dólares ($5,000) por cada violación, y el total no podrá sobrepasar los cincuenta mil dólares ($50,000). 26 L.P.R.A. sec. 321a.

nado, 26 L.P.R.A. sec. 215, y requirió que todas las personas sujetas a la reglamentación conservaran los documentos y expedientes sobre sus operaciones, y los tuvieran accesibles al organismo. Véase *Comisionado de Seguros v. Bradley*, supra, pág. 30.

En síntesis, los estatutos que le otorgan poderes al Comisionado disponen que éste puede imponer diversas sanciones por violaciones a sus órdenes y a las disposiciones del Código de Seguros. Estas sanciones podrían conllevar la revocación indefinida de la licencia de agente o de corredor, o una combinación de sanciones diversas.

A la luz de esta normativa, examinemos los casos ante nuestra consideración.

## IV

En los dos (2) casos de autos, no existe controversia en cuanto a que las entidades cometieron las violaciones imputadas. En el caso de Associated Insurance, esta agencia —en tres (3) ocasiones separadas y durante un período prolongado de tiempo— incumplió con las órdenes del Comisionado al requirirle que sometiera información sobre unas querellas presentadas en su contra. A pesar de haberle concedido tres (3) oportunidades para contestar, Associated Insurance ignoró y desobedeció las órdenes del Comisionado. Ante la seriedad de la actitud asumida por Associated Insurance, el Comisionado emitió una cuarta orden en la cual le impuso una tercera multa administrativa y le advirtió que de no comparecer se exponía a que se le revocara o suspendiera su licencia de agente general. Sin embargo, el término transcurrió sin que Associated Insurance contestara los requerimientos o pagara la multa impuesta.

Como resultado de su incumplimiento se celebró una vista administrativa, a la cual Associated Insurance tampoco compareció ni se excusó. El caso quedó entonces so-

metido para adjudicación final con el expediente de la querella como única pieza de evidencia. Éste claramente sostiene que Associated Insurance desafió reiteradamente las órdenes del Comisionado y obstruyó el proceso investigativo que se estaba llevando a cabo con relación a una querella presentada en su contra por un consumidor. Ante esta situación, el Comisionado emitió una resolución para suspender la licencia de agente de seguros de Associated Insurance y revocar la multa anteriormente impuesta. En su resolución, el Comisionado hizo constar que la suspensión se debió a la "conducta de abierto desafío y franco menosprecio a la autoridad [del Comisionado]".

Fue después de recibir esa resolución que Associated Insurance finalmente contestó los requerimientos mediante una moción de reconsideración. A la fecha cuando presentó dicha moción, había transcurrido cuatro (4) años desde la primera orden del Comisionado. No obstante, el Comisionado acogió la moción de reconsideración y redujo el período de suspensión a un término de cuatro (4) meses. En su determinación final destacó que en el pasado Associated Insurance había observado un patrón de conducta de no responder a las órdenes del Comisionado.

Associated Insurance no cuestiona que cometió la falta imputada ni que el Comisionado tenía autoridad para suspender la licencia. Tampoco plantea que no hubiera evidencia sustancial en el *récord* que sostuviera la decisión del Comisionado. De los autos se desprende que Associated Insurance tuvo varias oportunidades para defenderse, pero ignoró los requerimientos del Comisionado. No compareció a la vista señalada para darle una oportunidad de ser oído, bajo el apercibimiento de que su incomparecencia podría conllevar la suspensión de su licencia.

En estas circunstancias existe evidencia sustancial para apoyar la determinación del Comisionado y la sanción impuesta. La conducta de Associated Insurance fue un desafío abierto a la autoridad del Comisionado y a su capaci-

dad para regular una industria compleja y altamente regulada. Contrario a lo resuelto por el Tribunal de Circuito de Apelaciones y por el foro de instancia, en el caso de autos corresponde al Comisionado, en primera instancia, y no a los tribunales determinar la sanción apropiada. Considerando las determinaciones de hecho y explicaciones bien fundamentadas del Comisionado sobre las razones por las cuales decidió suspender a Associated Insurance y, además, su disposición a reducir el término de la suspensión por la vía de reconsideración, los foros recurridos cometieron el error de sustituir su criterio por el de la agencia en un caso en que claramente no se actúo de forma arbitraria.

 Tenemos presente que por la naturaleza de este caso y por las partes en él implicadas, la decisión del Comisionado tendrá un efecto de estimular a otras compañías a que contesten oportunamente las órdenes del Comisionado, en particular aquéllas relacionadas con reclamaciones de consumidores. Para que prevalezca el propósito legislativo y para que nuestra revisión también tenga un fin vinculado al problema cuya solución se persigue, debemos tener deferencia a la interpretación del Código de Seguros que realice el Comisionado y deben garantizar que ese organismo tenga todos los poderes que se requieren para investigar las querellas de los consumidores contra empresas que alegadamente hayan incurrido en prácticas inescrupulosas. Véase, además, *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, supra.

Como correctamente afirma el Comisionado:

El negocio de seguros es una actividad económica compleja, abarcadora y de muchos participantes. Por su efecto en la economía y en la sociedad se ha resuelto que está revestida de gran interés público. Para proteger tal interés la reglamentación es extensa y compleja. Se requiere, por ende, un ente reglamentador de gran conocimiento y experiencia en el campo a quien se le reconozca su autoridad. De ahí la razón del peritaje y el amplio poder de sanciones que la Legislatura le delegó al

Comisionado. Permitir que un agente de seguros, como en este caso, desobedezca reiteradamente las órdenes del ente reglamentador y éste no pueda hacer uso de la sanción de suspensión de licencia que le autorizó el legislador a utilizar, trastoca todo el andamiaje regulador de la Oficina del Comisionado de Seguros. Este es un mal precedente y mal ejemplo para todos los que componen la industria de seguros y su efecto negativo sobre la función fiscalizadora del Comisionado no puede menospreciarse. (Cita omitida.) Petición de *certiorari*, pág. 13.

▮▮ Igualmente ocurre con la suspensión impuesta a S.L. Caribbean por emitir certificaciones con información falsa. De la exposición normativa anterior se desprende que el Comisionado tiene el poder para imponer sanciones a una entidad que entregue intencionalmente certificaciones erróneas a los investigadores sobre el balance adeudado en primas a una compañía aseguradora. Entre estas sanciones el Comisionado tiene el poder de suspender provisionalmente a un agente por no ser una persona competente y confiable en el desempeño de sus negocios como agente. 29 L.P.R.A. sec. 946(1)(f).

Del *récord* administrativo se desprende que existe evidencia sustancial para sostener la decisión del Comisionado de suspender a S.L. Caribbean y a López Pabón. En primer lugar, del expediente surge que a principios de 1992 S.L. Caribbean envió certificaciones erróneas a los investigadores del Comisionado que estaban haciendo una auditoría de la Corporación Insular de Seguros. En dicha certificación informó que le adeudaba la cantidad de dos millones ciento sesenta y cuatro mil seiscientos treinta y ocho dólares ($2,164,638) en primas por pagar de la agencia, cuando la cantidad correcta era seiscientos treinta y cuatro mil ciento treinta y seis dólares con ocho centavos ($634,136.08). Durante la vista celebrada por el Comisionado, S.L. Caribbean y López Pabón ofrecieron explicaciones claramente contradictorias para justificar este error. A tenor con su poder adjudicativo, el Comisionado dirimió credibilidad y determinó que éstos hicieron una confirmación incorrecta del balance adeudado.

En su decisión, el Comisionado sostuvo que esta certificación incorrecta no le permitió tener un cuadro correcto de la situación financiera de la Corporación Insular de Seguros. Explicó que uno de los métodos más importantes utilizados por los auditores en sus trabajos son las certificaciones: "La importancia de las confirmaciones dentro de la industria de seguros va a la esencia del negocio mismo. El sistema de fiscalización descansa en la veracidad de las confirmaciones emitidas por los miembros de la industria." Considerando la importancia de estas certificaciones, el Comisionado concluyó que la información ofrecida por S.L. Caribbean no pudo haber salido de la agencia general "sin haber sido verificada y aprobada por su presidente, el agente Samuel López".

Además, cuando se inició la investigación sobre esta certificación errónea, López Pabón no contestó de forma oportuna los requerimientos del Comisionado. Esto impidió que los auditores del Comisionado iniciaran rápidamente su investigación, una vez la agencia se percató de que se le suministraron datos incorrectos que afectaban la situación económica de la Corporación Insular de Seguros.

Finalmente, del expediente también se desprende que el Comisionado cumplió con el debido proceso de ley al adjudicar la controversia de autos. Antes de suspender a los agentes, el Comisionado celebró una vista adjudicativa formal. Por otro lado, aún después de adjudicar la controversia, el Comisionado, en reconsideración, modificó las sanciones y revisó algunas de sus determinaciones. Ambas resoluciones explican cuidadosamente los hechos que tuvo ante su consideración y las determinaciones que dieron lugar a las sanciones impuestas.

Aunque la sanción impuesta es severa, en ausencia de prueba de que la decisión es arbitraria e injustificada no debemos sustituir el criterio del Comisionado de que S.L. Caribbean y López Pabón no reunían los requisitos de con-

fiabilidad y competencia requeridos por los Arts. 9.070(1) y 9.170(3) del Código de Seguros, 26 L.P.R.A. secs. 907(1) y 917(3). Por ende, a tenor con lo dispuesto en el Art. 9.460, el Comisionado tenía poder para suspender o revocar sus licencias. 26 L.P.R.A. sec. 946(f).

En el caso particular de la industria de seguros, el Comisionado tiene una gran responsabilidad pública de garantizar que las aseguradoras tengan la solvencia económica para cumplir con sus responsabilidades con los consumidores. Con estos propósitos, el Comisionado tiene el poder de requerir informes periódicos a las entidades con licencias. Estos informes deben incluir información correcta sobre la actividad sujeta a reglamentación y el Comisionado tiene que tener poderes amplios para castigar a las entidades que sometan información errónea sobre la situación financiera de una compañía de seguros. Aunque debemos ser cuidadosos al revisar sus decisiones sobre estos extremos, tenemos que tener un cuidado especial en evitar que se socave su autoridad para reglamentar esta industria tan cuidadosamente regulada por el Estado.

Por las razones antes expuestas, procede que revoquemos las sentencias recurridas del Tribunal de Circuito de Apelaciones y del entonces Tribunal Superior.

*Se dictará la sentencia correspondiente.*