# 2004 DTA 129

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

JUAN CARLOS ORTIZ MUÑOZ
Querellado-Recurrente

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO
Querellante-Recurrida

Núm. KLRA-2003-00833

San Juan, Puerto Rico, a 9 de agosto de 2004

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces Negroni Cintrón y González Vargas

González Vargas, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante nos, el recurrente, señor Juan Carlos Ortiz Muñoz (en adelante, Sr. Ortiz o Recurrente), mediante recurso de Revisión Administrativa y solicita que dejemos sin efecto una Decisión Administrativa emitida el 13 de septiembre de 2003 por el Director Ejecutivo de la Autoridad de Energía Eléctrica de Puerto Rico (en adelante, AEE). Mediante dicha decisión, se ordenó la separación definitiva de empleo y sueldo del Sr. Ortiz.

**I**

El Sr. Ortiz se desempeñó como trabajador general de líneas eléctricas de la AEE por un período aproximado de diez años. El 1 de abril de 1997, el Sr. Héctor Colón, supervisor de conservación de líneas eléctricas, le comunicó por escrito al Recurrente que de conformidad con el procedimiento disciplinario de la Autoridad y de las disposiciones correspondientes del Convenio Colectivo vigente, le estaba formulando cargos por infracción a las Reglas de Conducta Núm. 1: tardanzas repetidas, ociosidad, falta de interés o negligencia en el desempeño de los deberes del empleo; Regla Núm. 4: dejar de notificar una ausencia al supervisor como lo disponen las reglas sobre ausencias; y Regla Núm. 18: insubordinación.

En dicha comunicación, el supervisor le informó además que durante el período de marzo de 1995 a marzo de 1996, de un total de 2,025.00 horas laborables, estuvo ausente 1,259.59 horas, equivalente a un 62.20% de ausentismo. Para el período de marzo de 1996 a marzo de 1997 de 1,950.00 horas laborables, estuvo ausente 1,080.75 horas, el equivalente a un 55.40% de ausentismo. █ En la carta también se hizo constar que en innumerables ocasiones se le increpó sobre su conducta de ausentismo crónico sin obtener resultados positivos. Por ello estaba recomendando como medida disciplinaria la separación definitiva de empleo y sueldo. Según surge del expediente, el Recurrente aceptó los cargos que se le imputaron, solicitó una clemencia administrativa y la misma le fue concedida. Cónsono con lo anterior, se firmó un Acuerdo de Transacción el 16 de enero de 1998 en el cual se le otorgó al Sr. Ortiz una probatoria de 2 años, además de imponerle ciertas medidas y restricciones. A tono con ello, se dejó en suspenso la medida disciplinaria del despido. █ Entre las medidas y restricciones estipuladas en el acuerdo, merecen destacarse que la probatoria podía ser suspendida en cualquier momento de su vigencia en caso de que el recurrente observara conducta prohibida por las Reglas de Conducta de la AEE **u otra conducta incorrecta**, si incurría en más de dos ausencias (equivalentes a 15 horas) o en tardanzas repetidas de más de 18 minutos en un mes. Asimismo, el Recurrente también se obligó a someterse al Programa de Servicios de Apoyo a la Salud del Empleado (PAE) y a no ausentarse de sus citas al PAE sin causa justificada en más de dos ocasiones consecutivas.

A pesar de lo anterior, para el 17 de febrero de 199, el Sr. Ortiz incumplió con los términos y condiciones de dicho Acuerdo, y a pesar de ello, la AEE le dio la oportunidad de firmar otro acuerdo, aunque en esta ocasión se le extendió la probatoria por tres años adicionales. Poco más de un año de estar el recurrente bajo probatoria, el entonces Director Ejecutivo de la AEE, Sr. Miguel A. Cordero, le informó a éste mediante carta que el Ing. William R. Vázquez solicitó la revocación de la probatoria que le fue concedida, basado en repetidas ausencias injustificadas ocurridas durante el período del 14 de noviembre de 1999 al 25 de diciembre de 1999, y por el incumplimiento de su obligación de visitar el PAE. El ex Director le informó de su derecho a solicitar una vista administrativa, y que de no solicitar la misma, se procedería con la revocación de la probatoria concedida, dando lugar a la separación permanente de empleo y sueldo. █

El 28 de junio de 2000, se celebró la vista en su fondo para dilucidar la solicitud de revocación de probatoria. El Recurrente, una vez más, aceptó haber incumplido con el Acuerdo, pero a pesar de ello hubo una transacción y se convino extenderle por segunda ocasión el período de probatoria convenido en el Acuerdo de Transacción del 17 de febrero de 1999. Surge, además, de la página 10 del apéndice de la recurrida, █ que para el 24 de septiembre de 2002, el Recurrente no había realizado los ajustes personales necesarios para acoplarse como es debido a su trabajo, que continuaba ausentándose en exceso en comparación con sus otros compañeros de empleo y que como resultado de lo anterior el Oficial Examinador expresó que no veía un progreso en la conducta del

recurrente.

Por otra parte, el 21 de febrero de 2003, el Sr. Ortiz fue sentenciado por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI), a cumplir seis meses de sentencia suspendida por cinco violaciones al Art. 153 del Código penal (amenazas) y a cumplir cinco años de sentencia suspendida por una violación al Art. 105 del Código penal (actos lascivos o impúdicos). Como parte de la sentencia que le fue impuesta, el TPI le ordenó tratamiento interno en el Programa Teen Challenge. Así las cosas, el 24 de febrero de 2003, el Recurrente solicitó a la AEE una licencia sin sueldo por un año para poder cumplir con la orden del TPI de internarse en el programa de Teen Challenge en Aguadilla. Tal solicitud fue denegada el 27 de marzo de 2003. Debido a lo anteriormente narrado, el 21 de marzo de 2003, el Ing. Supervisor Elliot Quiñones Irizarry solicitó la revocación de la probatoria del Sr. Ortiz.

El 19 de junio de 2003, se celebró la vista sobre la revocación de probatoria, a la cual no comparecieron el Recurrente ni su abogado, a pesar de haber sido oportunamente citados. A tenor con lo dilucidado en la mencionada vista, el 13 de septiembre de 2003, mediante decisión administrativa, la AEE concluyó que los términos y condiciones del Acuerdo de Transacción habían sido violados en varias instancias, por lo que ordenó el despido del Sr. Ortiz. El 29 de septiembre de 2003, el Recurrente presentó solicitud de reconsideración ante la AEE, pero la misma no fue acogida. Inconforme con tal decisión, acudió ante este Tribunal el 17 de noviembre de 2003 mediante escrito de Revisión Administrativa y señaló los siguientes errores:

*"1. Erró el Director Ejecutivo al avalar una recomendación de destitución que contraviene de manera expresa una determinación judicial de un Tribunal predicada en la política correctiva y de rehabilitación que contempla la legislación penal.*

*2. Erró el Director Ejecutivo al avalar la recomendación de destitución del recurrente de su empleo público permanente, hecha por el Oficial Examinador que emitió la misma luego de efectuar una vista ex-parte y luego de llegar a conclusiones de hechos y derecho que el recurrente no tuvo oportunidad real de refutar, violando así su derecho a no ser privado de su propiedad sin mediar el debido proceso de ley."*

El 9 de febrero de 2004, este Tribunal mediante Resolución le concedió un término de diez días a la AEE para exponer su posición en este caso. El 23 de febrero, la AEE presentó su alegato en oposición. Con el beneficio de ambos escritos, procedemos a resolver el recurso ante nos.

## II

La función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC v. Caguas Centrum*, 148 D.P.R. 70 (1999). Los tribunales apelativos han de conceder gran deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado que estos organismos poseen. *Rivera Rentas v. A & C Development Corp.*, 144 D.P.R. 450 (1997).

Por su parte, la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A., sec. 2101, *ex seq.*, en su sección 4.5, limita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 L.P.R.A. § 2175. Acorde con lo anterior, nuestro Tribunal Supremo, en el caso de *Municipio de San Juan v. Junta de Calidad Ambiental*, **2000 J.T.S. 193** (2000), expresó que: *"[. . .] la revisión judicial de las determinaciones de las agencias administrativas comprende: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos de acuerdo al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho."* Véase, además, Demetrio Fernández Quiñones,

*Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, sec. 9.3, pág. 521 (1993). Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la posición de la agencia o si, por el contrario, es incompatible con las contenciones de ésta. *Associated Insurance Agencies, Inc. v. Comisionado de Seguros,* 144 D.P.R. 425 (1997). Si la interpretación de los hechos es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. *Associated Insurance v. Comisionado de Seguros, supra.* Por el contrario, si el tribunal luego de un estudio y análisis ponderado descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. *Pérez Vélez v. VPH Motors Corp,* **2000 J.T.S. 177** (2000).

Por su parte, el debido proceso de ley, en su vertiente procesal, obliga al Estado a celebrar un procedimiento justo y equitativo al intervenir con el interés propietario de una persona. Como corolario de lo anterior, ha sido reconocido por nuestro Tribunal Supremo que en el ámbito del derecho administrativo, aunque el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, se requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados. *López Santos v. Asoc. de Taxis de Cayey,* 142 D.P.R. 109 (1996). Así pues, para cumplir con el debido proceso de ley, en su dimensión procesal, la jurisprudencia ha establecido varios requisitos a ser satisfechos en todo procedimiento de índole adversativo, a saber: a) notificación adecuada del proceso; b) que el mismo se conduzca ante un juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado, y f) que la decisión se base en el expediente del caso. *López Santos v. Asociación de Taxis de Cayey, supra; Feliciano Figueroa v. Toste Piñero,* 134 D.P.R. 909 (1993). 3 L.P.R.A. sec 2151 (a).

Está asimismo claramente establecido que cuando un funcionario público o empelado público posee un interés propietario en su puesto, tiene el derecho a ser notificado de los cargos en su contra y a la celebración de una vista informal previa a su despido. *Unión Independiente de Empleados Públicos v. Autoridad de Edificios Públicos,* 146 D.P.R. 611 (1998); *Marrero Caratini v. Rodríguez Rodríguez,* 138 D.P.R. 215 (1995), *Torres Solano v. P.R. Telephone Co.,* 127 D.P.R. 499 (1990).

### III

A la luz de las normas jurídicas antes esbozadas, procederemos a resolver los errores señalados. Invertiremos el orden de los mismos, según fueron planteados en el recurso para efectos de discusión.

En el caso de autos, el Sr. Ortiz aceptó en varias ocasiones que violó las Reglas de Conducta de la AEE, por lo que solicitó clemencia administrativa y firmó voluntariamente un Acuerdo de Transacción. No obstante lo anterior, la AEE permitió que dicho Acuerdo fuera renegociado en dos ocasiones adicionales con el fin de evitar despedir al Sr. Ortiz. Surge del expediente que el Recurrente había estado internado en un programa anteriormente para fines de rehabilitación. Nótese, también que de los documentos incluidos en los apéndices de las partes surge que el Sr. Ortiz llevaba un patrón de ausentismo crónico como consecuencia directa de su adicción a drogas prohibidas, hasta el punto de ausentarse más de un 50% del tiempo destinado para trabajar.

Del expediente de este caso, se puede apreciar que la AEE siguió un proceso justo y equitativo antes de despedir al Sr. Ortiz, por lo que no se violó su derecho al debido proceso de ley en su vertiente procesal. Al Recurrente se le notificaron de forma adecuada los cargos que pesaban en su contra, los fundamentos en los cuales éstos se basaban y las vistas a celebrarse, incluyendo la fecha, hora y lugar. El proceso fue dirigido por un Oficial Examinador, el cual accedió en repetidas ocasiones a concederle al Recurrente oportunidades de ajuste y rehabilitación. Asimismo, éste tuvo oportunidad de ser oído y de defenderse de las querellas en su contra. Precisamente, como resultado de ello, logró que no lo despidieran y que en su lugar le concedieran el privilegio discrecional de la clemencia administrativa, en virtud de lo cual le extendieron en tres ocasiones la probatoria otorgada mediante Acuerdo de Transacción. El Sr. Ortiz también tuvo oportunidad de confrontarse con la prueba y los testigos en su contra, y de estar asistido de abogado durante todo el proceso.

A pesar de haberse seguido el proceso antes reseñado, el Recurrente señaló como error que se le violó su debido proceso de ley al celebrarse la vista sobre la revocación de probatoria sin su presencia ni la de su abogado. No le asiste la razón. Como se expuso anteriormente, la AEE cumplió a cabalidad con su deber de proveerle un proceso justo e imparcial al Sr. Ortiz, de suerte que éste tuviera la oportunidad de defender su interés en el empleo que ostentaba. En efecto, la vista se celebró en ausencia del recurrente y de su abogado. Sin embargo, ésta fue oportunamente notificada mediante Orden del 30 de abril de 2003. El Recurrente alegó que por inadvertencia de su abogado no compareció a la vista previamente señalada y notificada. No podemos dar mérito a tal contención. Es norma reiterada que una parte es responsable por los actos de su abogado. *Díaz v. Tribunal Superior*, 93 D.P. R. 79 (1966). El Sr. Ortiz escogió voluntariamente a su representación legal y no puede ahora evitar las consecuencias de los actos y omisiones de éste. Olvidos, inadvertencias o conflictos de calendario del abogado o de las partes, no constituyen, de ordinario, justa causa para excusar su incomparecencia a una vista en su fondo. El calendario de los procesos administrativos adjudicativos, como tampoco los de naturaleza judicial, pueden supeditarse a eventos o circunstancias como esas. Ello colocaría una carga onerosa sobre el ordenado manejo de los procesos adjudicativos ante estos organismos.

Aunque la vista se celebró en ausencia del querellado, surge de la transcripción de la vista que el Oficial Examinador se condujo de forma justa e imparcial, y basó su informe final en la prueba que tuvo ante sí, la cual obra en el expediente. Destacamos además que el Oficial Examinador que presidió la vista había atendido el caso del Sr. Ortiz desde sus inicios, por lo que estaba ampliamente relacionado con el mismo. Asimismo, de los documentos en autos fue objeto de consideración el pobre ajuste del recurrente y el incumplimiento de éste con las condiciones impuestas en el Acuerdo de Transacción. De lo anterior resulta evidente que la determinación sobre el despido del Sr. Ortiz no fue resultado de su incomparecencia a la vista ni la de su abogado, sino de los abundantes incumplimientos a sus deberes y responsabilidades como empleado de la A.E.E., incluyendo la necesidad de ausentarse de su trabajo por un año por causas atribuibles a sus problemas de conducta.

No estamos ciertamente frente a un caso en el que una agencia priva a su empleado de su empleo de manera arbitraria y en violación del debido proceso de ley. El hecho de que la vista se celebrara sin la comparecencia del querellado, no significa que la agencia actuara ilegal o impropiamente. Por el contrario, la AEE le proveyó al Sr. Ortiz todas las oportunidades de ajuste y rehabilitación que estuvieron a su alcance. Las razones de dicha agencia para revocarle la probatoria al Recurrente surgían del propio Acuerdo voluntariamente firmado por éste. El Sr. Ortiz violó los términos y condiciones del mismo, el cual contemplaba de forma clara y precisa que si éste incurría en conducta prohibida por las Reglas de Conducta u otra conducta incorrecta, entre otras condiciones, procedía la revocación de la probatoria y daba lugar a la separación definitiva de empleo y sueldo. El segundo error, por tanto, no se cometió.

Por su parte, el primer señalamiento de error va dirigido a cuestionar la autoridad de la AEE para despedir a un empleado que está sujeto a la autoridad judicial en un caso penal que lo coloca en la necesidad de ausentare de su trabajo en cumplimiento del dictamen judicial. El planteamiento esbozado por el Sr. Ortiz no puede ser acogido por esta Curia. Los procesos judiciales de índole penal son independientes de cualquier proceso disciplinario o de otro tipo al cual puede estar expuesto un acusado ante el foro administrativo, aunque ello incida sobre su trabajo. En el caso de marras, las sentencias que le fueron impuestas por el TPI al Sr. Ortiz iban dirigidas a penalizar las actuaciones delictivas cometidas por éste, sin que de modo alguno el Tribunal pretendiere al ejercer su jurisdicción intervenir o alterar otros procesos en el ámbito administrativo relacionados en el acusado. Si bien es cierto que como parte de la pena impuesta se le concedió al recurrente el beneficio de sentencia suspendida bajo ciertas condiciones, entre ellas permanecer en un empleo, de ninguna manera esa condición impedía a su patrono despedirlo, conforme a la reglamentación laboral aplicable. No le correspondía ni pretendía el TPI intervenir con el proceso administrativo que dirigía la AEE contra el recurrente por su desempeño laboral.

Téngase presente, adicionalmente, que ningún patrono viene obligado a reservar el empleo a un trabajador como consecuencia de ser encarcelado por la comisión de delitos. Tampoco tiene esa obligación, por razón de que

el empleado deba someterse a algún tipo de tratamiento como resultado del proceso penal, que le impida asistir regularmente a su trabajo, particularmente en las circunstancias que presenta este caso. A la luz de lo anterior, el primer error alegado tampoco se cometió.

## IV

Por los fundamentos antes expuestos, se deniega la expedición de auto solicitado por el Recurrente.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 129**

**1.** Véase págs. 11-13 del apéndice del recurrente.

**2.** Véase pág. 14 del apéndice del recurrente.

**3.** Véase pág. 20 del apéndice del recurrente.

**4.** Acta de la vista de seguimiento del 24 de septiembre de 2002.