# 2004 DTA 141

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN, PANEL ESPECIAL IV

COMISIONADO DE SEGUROS DE PUERTO RICO
Recurrido

v.

SALDAÑA & ASSOCIATES, INC.
Recurrente

Núm. KLRA-03-00647

San Juan, Puerto Rico, a 13 de septiembre de 2004

Panel especial integrado por su Presidente, el Juez Gierbolini,
el Juez Rodríguez Muñiz y el Juez Rivera Román

Gilberto Gierbolini, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Saldaña & Associates, Inc. (Saldaña) nos solicita la revisión de una Resolución en Reconsideración emitida por el Comisionado de Seguros de Puerto Rico (Comisionado) el 14 de agosto de 2003, en la cual fue confirmada Resolución emitida el 2 de mayo de 2003 ordenando a Saldaña el pago de unas multas.

### I

Durante los años 1997 al 2001, Saldaña poseyó licencia de corredor de seguros de líneas excedentes debidamente expedidas por el Comisionado. El 12 de marzo de 2001, el Comisionado inició un examen de las operaciones y transacciones de negocios de seguros realizadas por Saldaña para el período de 1 de enero de 1997 al 31 de diciembre de 2000. Como resultado de dicho examen, fue preparado un informe indicando los hallazgos y conclusiones. El mismo fue notificado a Saldaña el 28 de febrero de 2002.

Saldaña objetó el informe y el 13 de junio de 2002 procedió a pagar la contribución adeudada y requerida por el Artículo 10.130 del Código de Seguros, 26 L.P.R.A. Sección 1013 (suplemento de 2003). ██ Sin embargo, fue iniciado un procedimiento adjudicativo ante el Comisionado durante el cual hubo una vista administrativa. Una vez sometido el caso, el Oficial Examinador emitió su decisión el 2 de mayo de 2003. Mediante la misma, impuso una multa administrativa total de $138,825.00 desglosada como sigue:

*"(1) $250.00 por violación al Artículo 3 de la Regla XXVIII del Reglamento del Código de Seguros de Puerto Rico ("Reglamento").*

*(2) $250.00 por violación al Artículo 10.090 (1) del Código de Seguros ("Código").*

*(3) $125,975 por violaciones al Artículo 10.130 del Código.* ██

*(4) $12,100 por violaciones al Artículo 1 de la Regla XXVIII del Reglamento. 26 L.P.R.A. Sección 800.1901.*

*(5) $250.00 por violación al Artículo 4 de la Regla XXVIII del Reglamento, 26 L.P.R.A. Sección 800.1904."*

Inconforme con la Resolución emitida, Saldaña presentó moción de reconsideración en cuanto a las tres últimas multas impuestas. La agencia presentó oposición y Saldaña presentó réplica. El Comisionado emitió su Resolución en Reconsideración objeto del recurso de revisión ante nuestra consideración.

Mediante la Resolución en Reconsideración, el Comisionado concluyó que el Capítulo 10 del Código aplica a los seguros marítimos oceánicos. El Comisionado definió que un seguro marítimo oceánico es un seguro de líneas excedentes cuando el mismo ha sido obtenido en dicho mercado, luego de que no haya podido adquirirse en el mercado de aseguradores autorizados, 26 L.P.R.A. Sección 1007. ██ A su vez, señala que estos seguros no están excluidos de las disposiciones del Capítulo 10 del Código, por lo que a éste les aplica, excepto por los Artículos 10.071 y 10.072 en donde están excluidos expresamente, 26 L.P.R.A. Sección 1007 (a) y 1007 (b). ██ Estas disposiciones lo que conllevan es que no exista impedimento estatutario alguno para que un corredor de

seguros de líneas excedentes coloque el riesgo marítimo con un asegurador no autorizado no elegible. Por tanto, el Comisionado concluye que aplica el pago de la contribución de 9 % a los seguros marítimos oceánicos según dispone el Código, 26 L.P.R.A. Sección 1013. 

Con relación a la cantidad de la multa impuesta, el Comisionado señala que Saldaña conocía de las consecuencias de su incumplimiento por cada día de atraso. A su vez, señala que Saldaña incumplió con el método de pago global al no informar en el informe anual un número de pólizas. El Comisionado determinó que el pago debe ser efectuado conforme a la Regla XXVIII del Reglamento, por lo que el mismo constituye la suma total de contribuciones impuestas sobre cada póliza de seguros de líneas excedentes. De esta manera, Saldaña realiza un pago global, pero ello no conlleva una contribución global. El Comisionado concluye que al omitir las pólizas en el informe anual y no efectuar el pago a tiempo de las contribuciones, incurre en igual número de violaciones, por lo que procede imponer multa por el atraso incurrido en el pago de las contribuciones correspondientes a cada póliza que omitió informar. El Comisionado aumentó la multa a $245,000.00 a base de 9,800 días desde que Saldaña no informó las pólizas hasta el pago de las mismas.

Además, el Comisionado determinó que la póliza de Eurobank and Trust Co. conlleva una circulación de riesgo al ser ésta renovada. Concluyó que la póliza en cuestión no tiene una vigencia de tres años, sino que es un acuerdo de renovación automático sujeto a que sean cumplidas ciertas condiciones, por lo que hubo una violación del Artículo 4 de la Regla XXVIII del Reglamento. Inconforme, Saldaña acude ante nos y señala que erró el Comisionado al: (1) aplicar a los seguros oceánicos marítimos las disposiciones del Capítulo 10 del Código; (2) imponer una sanción desproporcionada e injusta; y (3) interpretar que la póliza de Eurobank and Trust Co. era una de renovación anual y, por tanto, tenía que circular el riesgo anualmente.

Saldaña señaló que la multa ascendente a $245,000.00 fue impuesta por no haber incluido en el informe anual algunos casos y no pagar la contribución en otros casos, correspondientes a 16 pólizas que supuestamente fueron colocadas en el negocio de seguros de líneas excedentes. Además, indicó que el Comisionado le impuso una multa ascendente a $12,100.00 por no haber circulado, antes de su colocación, 242 riesgos de yates conforme dispone el Artículo 1 de la Regla XXVIII del Reglamento. Saldaña alegó que ocho de los casos de falta de pago de contribución corresponden a seguros marítimos, por lo que no corresponde el pago de contribución alguna por estar éstos excluidos de la definición de seguros de líneas excedentes. De igual forma, arguye que previo a la colocación de los seguros marítimos, éstos no tienen que circular por estar excluidos de la aplicación del Capítulo 10 del Código en cuanto a la circulación y pago de la contribución.

Saldaña fundamentó que ello es así debido a la definición incorporada para lo que constituye un seguro de línea excedente adoptada por la Ley Número 7 del 30 de agosto de 1961 cuando fue enmendado el Artículo 10.070, derogó el Artículo 10.090 y creó los Artículos 10.071 y 10.072 del Código, 26 L.P.R.A. Sección 1007 (a), 1007 (b). A su vez, sostiene que la referida contribución no aplica al seguro marítimo oceánico por la naturaleza ambulatoria del objeto asegurado, 26 L.P.R.A. Sección 1013 (a). También indicó que estos seguros marítimos oceánicos no están regulados por el Código. 

De otra parte, Saldaña cuestionó la multa administrativa impuesta por el Comisionado en el sentido de que éste tiene facultad para imponer multas de hasta $25.00 diarios, pero tiene discreción para imponer un monto menor a tenor con el lenguaje utilizado en el Artículo 10.131, 26 L.P.R.A. Sección 1013 (a). Este abogó que la multa impuesta es injusta y desproporcionada. Además, indicó que la multa debe ser impuesta desde el día que dejó de pagar la contribución local. Igual argumento expresó Saldaña en su reconsideración al indicar que *"es injusta porque se fija de acuerdo con el número de pólizas, cuyas contribuciones se dejaron de pagar a tiempo, y este número se multiplica por $25 diarios, a pesar de que la contribución se paga globalmente a principio de cada año, para lo cual el Corredor prestó una fianza que garantiza su pago."* Saldaña recalcó que se acogió al método de pago de la contribución sobre la prima dispuesto en el inciso (a) (ii) de la Regla XXVIII del Reglamento. Por lo que, a tenor con ello, debía presentar un informe anual y el pago de la contribución

correspondiente dentro de los 60 días siguientes a la terminación de cada año calendario. Por ello es que arguye que la multa dispuesta bajo 26 L.P.R.A. 1013 (a), debe ser impuesta a base del número de días de atraso del pago de la contribución global y no por cada póliza colocada. ██ Saldaña sostuvo que la multa es desproporcionada a la falta cometida.

Por último, Saldaña indicó que la póliza emitida a Eurobank and Trust Co. tiene un término de vigencia de tres años si cumplían una serie de condiciones, aunque el pago de la prima era anual. Por lo que no tenía que circular el riesgo de la póliza por cada año porque el mismo ya estaba cubierto por la totalidad de la póliza.

La posición que el Comisionado sustenta señala que el Capítulo 10 del Código aplica a los seguros marítimos oceánicos por no haber sido excluidos expresamente por el legislador de su aplicación como ocurrió en otros capítulos. A excepción de los Artículos 10.071 y 10.072, 26 L.P.R.A. Secciones 1007 (a) y 1007 (b). El Comisionado señala que es requerido que los seguros sean colocados a través de aseguradores autorizados para hacer negocios en Puerto Rico. Sin embargo, cuando una parte o la totalidad de la cubierta no puede ser obtenida a través de aseguradores autorizados, entonces es permitido recurrir al mercado de líneas excedentes para colocar un seguro con un asegurador no autorizado elegible, 26 L.P.R.A. Sección 1007. Por ende, un seguro marítimo oceánico es un seguro de líneas excedentes cuando el mismo es obtenido en dicho mercado, luego de que no hayan podido adquirirlo en el mercado de aseguradores autorizados. El Código requiere a los corredores de líneas excedentes tramitar con aseguradores no-autorizados elegibles, aquellos seguros que no puedan ser obtenidos en el mercado de aseguradores autorizados. No obstante, al no aplicar los Artículos 10.071 y 10.072 del Capítulo 10 al seguro marítimo oceánico, un corredor de seguros de líneas excedentes que gestiona la colocación de un riesgo de esa índole en el mercado de líneas excedentes, no está obligado a efectuar el mismo con aseguradores no-autorizados elegibles. Por tanto, dichos seguros pueden ser colocados con un asegurador no-autorizado no elegible.

Por tanto, el Comisionado concluye que el seguro otorgado en Puerto Rico y colocado con aseguradores elegibles, a través de corredores de líneas excedentes, debe ser circulado y tiene el deber de pagar contribuciones del nueve por ciento del total de la prima suscrita, ██ 26 L.P.R.A. Sección 1013 (1). Independiente de la naturaleza ambulatoria de lo asegurado, ya que la cubierta fue otorgada en Puerto Rico y a esos efectos le es de aplicación la contribución sobre la prima cobrada. El Comisionado indicó que el propósito que persigue la circulación de riesgo y el pago de contribuciones es desalentar que los riesgos que puedan ser asumidos por los aseguradores domésticos sean colocados con otros aseguradores, sobre todo con aseguradores no-autorizados no elegibles donde el Comisionado no posee jurisdicción para proteger los asegurados garantizándoles la solución a sus reclamaciones, ni la solvencia económica que debe poseer todo asegurador para respaldar su liquidez y pago. A tenor con ello, cuando estamos ante un corredor regulado por el Comisionado, como lo es el corredor de líneas excedentes que quiere colocar un seguro marítimo, es necesario que éste previamente circule el riesgo. Esta es la única manera de corroborar que el mercado de aseguradores autorizados pueda optar por suscribir el riesgo.

Con relación al monto de la sanción, el Comisionado indicó que ésta corresponde a $25.00 diarios y dicha multa no es discrecional. Dicho cómputo fue hecho para las pólizas declaradas en las que no hubo pago alguno de la contribución contemplada o que tampoco fue incluido un pago menor, en forma grupal por los días transcurridos sin que fuera pagada la contribución requerida. En cuantos a las pólizas no declaradas, dicha penalidad es computada diariamente a base de cada póliza colocada en el mercado de línea excedente dejada de informar, lo cual comenzaría a partir de la expiración del día 60, luego de finalizado el año calendario, Regla XVII del Reglamento. El Comisionado señala que ello es así única y exclusivamente para aquellos corredores de líneas excedentes acogidos al beneficio de pago anual, siempre y cuando sean reportadas las pólizas suscritas en el mercado de líneas excedentes, pero si no las declara, dejó de estar acogido al beneficio, ya que no presentó su informe y, por tanto, no aplica la protección reglamentaria como sucedió en el caso de autos. En cuanto a si la multa es una onerosa, el Comisionado señala que la cantidad a ser impuesta es conocida por Saldaña y que el

monto de la misma es debido a su propia inacción. El Comisionado señala que su posición le ha sido reiterada en varias ocasiones a éste.

Por último, y en cuanto a la posición sobre la póliza de Eurobank and Trust Co., el Comisionado discutió que la Sección 4 de la Regla XXVIII del Reglamento establece que la renovación de un seguro de líneas excedentes utiliza el mismo procedimiento de circulación de riesgos que la póliza original. Este señala que en el caso de autos, una póliza con un término de duración de tres años renovable anualmente bajo ciertas condiciones y cuya prima es pagada anualmente tiene que ser circulado el riesgo nuevamente. Así también, arguye que cada aniversario es una renovación y, por tanto, tienen que cumplir con el procedimiento establecido.

## II

Las partes en este pleito difieren en cuanto al alcance e interpretación de ciertas disposiciones del Código si son o no aplicables a seguros marítimos. Conforme a nuestro ordenamiento jurídico, es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales, *García Oyola v. J.C.A.,* 142 D.P.R. 532, 540 (1997). Los tribunales deben ser cautelosos al intervenir con las determinaciones administrativas, *Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995). El fundamento para ello es el hecho de que son las agencias administrativas las que poseen la experiencia y los conocimientos altamente especializados que están dentro del ámbito de sus facultades y responsabilidades, *Pacheco Torres v. Estancias de Yauco, S.E.,* ___ D.P.R. ___ (2003), **2003 J.T.S. 150**, a las páginas 210-211; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 533 (1993). Por tanto, queda establecida una presunción de legalidad y corrección a favor de las agencias administrativas, *A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones,* 124 D.P.R. 858, 864 (1989); *Murphy Bernabé v. Tribunal Superior,* 103 D.P. R. 692, 699 (1975).

No obstante, la deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado. Sólo será ejercida en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal o en forma tan irrazonable que su actuación constituya un abuso de discreción o cuando la determinación no sea sostenida mediante prueba sustancial, *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.,* ___ D.P.R. ___ (2004), **2004 J.T.S. 5**, a la página 501. De igual forma, la acción administrativa no será válida cuando hayan cometido un error en la aplicación de la ley, *Fuertes v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993); *Murphy Bernabé v. Tribunal Superior, supra,* a la página 699.

*"Como norma básica, los tribunales tienen la obligación de exigir que la conclusión administrativa sea apoyada explícitamente en la razón y la ley y sea parte de un patrón integrado y razonable de reglamentación," South P.R. Sugar Co. v. Junta,* 82 D.P.R. 847, 865 (1961). Los tribunales deben indagar sobre la razonabilidad de la decisión administrativa y no deben sustituir el criterio de dicho organismo por el suyo propio a menos que infrinjan valores constitucionales fundamentales, *Fac. C. Soc. Aplicadas, Inc. v. C.E.S., supra,* a la página 533; *Pachecho Torres v. Estancias de Yauco, S. E., supra,* a la página 211; *Metropolitana S. E. v. A.R.P.E., supra,* a la página 213.

Esta norma de otorgar deferencia y respeto a las interpretaciones de los organismos administrativos especializados cobra más importancia cuando revisamos fallos de ciertos organismos que tienen a su cargo la reglamentación de complejos procesos técnicos, sociales o económicos. Uno de estos sectores es el de seguros. Con el propósito de proteger al consumidor contra prácticas indebidas, el Estado tiene un legítimo interés en reglamentar esta industria tan compleja e importante. Por su importancia en el país y su complejidad, el Estado ha reglamentado extensamente los negocios de seguros a través del Código, *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 441-442 (1997).

De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y fue tomada en ausencia de evidencia sustancial. Tiene la obligación de refutar la presunción de corrección sin descansar en meras alegaciones, *Misión Industrial de Puerto Rico v. Junta de Planificación*, 146 D.P.R. 64, 131 (1998).

## III

En el presente caso, Saldaña no ha demostrado que la determinación del Comisionado sea arbitraria ni irrazonable. La evidencia presentada está limitada a las alegaciones e interpretaciones de Saldaña en cuanto a lo que son los seguros de líneas excedentes y a la alegada desregulación e inaplicabilidad del Código a los seguros marítimos.

El Código de Seguros en su capítulo 4, define cada seguro bajo su jurisdicción, incluye entre ellos el seguro marítimo oceánico, 26 L.P.R.A., Sección 405. La alusión expresa en el Código, refleja el propósito legislativo de reglamentarlo. Véase, además, el Artículo 3.090 del Código que dispone el capital mínimo que debe tener el asegurador de negocios de seguro marítimos oceánicos, 26 L.P.R.A. Sección 309.

A contrario sensu, cuando el legislador quiso excluir a los seguros marítimos del alcance del Código, lo hizo expresamente. Véase Artículos 10.071 y 10.072.

Como no existe ninguna disposición que exceptúe expresamente a los seguros marítimos de las demás disposiciones del Capítulo 10 del Código, todo riesgo marítimo oceánico que se coloque en el mercado de líneas excedentes, ya sea con un asegurador no autorizado elegible o con un asegurador no autorizado no elegible, constituye una cubierta de líneas excedentes y le aplica la contribución de nueve por ciento requerido en ley, 26 L.P.R.A. Sección 1013.

No obstante, la posición del Comisionado es que la colocación de los seguros marítimos por un asegurador de líneas excedentes en dicho mercado conlleva la aplicación a Saldaña de las disposiciones del Código aplicables a las líneas de seguros excedentes, independientemente de que sean seguros marítimos. Entre las cuales encontramos la imposición de la contribución al nueve por ciento de cada cubierta de seguro **otorgada** en Puerto Rico y el informar sobre las cubiertas de seguro de líneas excedentes dentro del término de 60 días después de obtenida la cubierta, 26 L.P.R.A. Sección 1013. El incumplimiento con lo antes expuesto acarrea la imposición de la multa administrativa según dispone la ley, equivalente a $25.00 diarios por cada día de incumplimiento. En el caso de autos, Saldaña incumplió con presentar el informe requerido en el Código. Por tanto, dicha multa es computable desde ese incumplimiento y la misma no resulta onerosa ni arbitraria. Saldaña estaba debidamente avisado de las consecuencias de su incumplimiento; el Comisionado ya le había informado de su posición anteriormente. También, una vez determinado que aplica el Capítulo 10 a los seguros marítimos oceánicos que son colocados en el mercado de líneas excedentes y siendo ésta interpretación una razonable, la determinación en cuanto a la circulación de los riesgos le aplica a éstos según dispone la Regla XXVIII en su Artículo 1. Dicha circulación de riesgos en el caso de la póliza emitida a Eurobank & Trust Co, debió ser circulada cada año que la póliza fue renovada como bien determinó el Comisionado.

Las alegaciones e interpretaciones de Saldaña no controvierten las interpretaciones del Comisionado, ni las ponen en duda y mucho menos demuestran la irrazonabilidad, arbitrariedad o capricho de la decisión emitida por el Comisionado. Por tanto, este Tribunal, auscultada la razonabilidad de las mismas, no debe intervenir, máxime en una materia como la de seguros donde la norma de deferencia cobra más importancia.

## IV

Por los fundamentos antes esbozados, **CONFIRMAMOS** la determinación del Comisionado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 141**

**1.** El mencionado Artículo 10-130 fue enmendado mediante la Ley Número 284 de 19 de diciembre de 2002.

**2.** Posteriormente, mediante Resolución en Reconsideración, el Comisionado determinó que al 31 de diciembre de 2000, Saldaña tenía un total de 4,510 días de atraso en el pago de las contribuciones correspondientes a 10 pólizas de seguros líneas excedentes que no informó. Al 13 de junio de 2002, cuando Saldaña satisfizo el pago de tales contribuciones, éste tenía un total de 9,800 días de atraso, por lo que la multa fue ascendida a $245,000.00.

**3.** *"Cualquier parte o la totalidad de una cubierta de seguro que no pueda obtenerse de aseguradores autorizados, cubierta que en adelante se designará en este título como "seguros de líneas excedentes",* podrá obtenerse de aseguradores no autorizados, siempre que:

*"(1) El seguro no pueda obtenerse de aseguradores autorizados, o ha sido obtenido hasta el máximo que dichos aseguradores están dispuestos a asegurar; Disponiéndose, que en el caso de los condominios residenciales de quince (15) metros o más estén o no sometidos al régimen de Propiedad Horizontal, el seguro no pueda obtenerse de al menos dos aseguradores autorizados; y*

*(2) dicho seguro se obtenga mediante un corredor autorizado de seguros de líneas excedentes, en adelante en este Capítulo llamado "corredor", y*

*(3) el seguro con un asegurador no autorizado no se procure o requiera con el fin de obtener ventajas, bien en cuanto al tipo de primas, o en cuanto a los términos del contrato de seguros; Disponiéndose, que este inciso no será de aplicación a los seguros de condominios sometidos al régimen de Propiedad Horizontal, [y]*

*(4) el seguro se obtenga de aseguradores no autorizados elegibles con arreglo a la Sección 1007 (a) de este título.*

*El inciso (1) no aplica si la cubierta de seguro ofrecida por un asegurador autorizado para cubrir el riesgo de impericia profesional médico-hospitalaria no constituye la cubierta mínima necesaria para conseguir una póliza de exceso en el mercado de líneas excedentes, en cuyo caso, el corredor de líneas excedentes podrá descartar la cubierta primaria ofrecida por el asegurador autorizado y acudir al mercado de líneas excedentes para obtener la cubierta necesaria."*

**4.** La Sección 1007 (a) del Código establece el requisito al corredor de seguros de líneas excedentes de tramitar el contrato de seguro con aseguradores elegibles de líneas excedentes. Para ello dispone un sin número de condiciones. El Artículo 4 de la Ley Número 7 de 30 de agosto de 1961 dispone que: *"Las disposiciones de los Artículos 10.071 y 10.072 (Secciones 1007 (a) y 1007 (b) de este título), no serán aplicables a los riesgos de aviación y a los riesgos marítimos oceánicos."* Ello quiere decir que en estos casos, no es necesario que los mismos sean colocados con aseguradores autorizados elegibles.

**5.** Dicha disposición trata sobre la contribución sobre seguros de líneas excedentes que en lo pertinente lee como sigue:

*"(1) Se impone **a cada cubierta de seguro de líneas excedentes otorgadas en Puerto Rico** o que cubriere riesgos residentes, ubicados o a ejecutarse en Puerto Rico, dondequiera que hubiere negociado, **una contribución igual al nueve (9) por ciento de la prima total cobrada por concepto de la misma**, excluyendo a contribución, excepto cubiertas dirigidas a cubrir el riesgo de impericia profesional médico-hospitalaria. **El corredor será responsable del cobro y pago de la contribución.***

*(2) **Dentro de los sesenta (60) días después de obtenida una cubierta de seguro de líneas excedentes, el corredor deberá presentar al Comisionado un informe de la misma para fines contributivos**, expresando los nombre y direcciones del asegurador y del asegurado, el número de la póliza y la fecha de expedición, la cantidad recibida por concepto de prima y el cómputo e importe de la contribución adeudada."* (Enfasis suplido).

La citada disposición claramente establece la contribución de un nueve (9%) por ciento de la prima total cobrada por

cada cubierta de seguro de líneas excedentes otorgadas en Puerto Rico. El citado artículo no diferencia entre la naturaleza, del objeto cubierto como una ambulatoria, sino que basta que el seguro haya sido otorgado en Puerto Rico para que este sujeto a la contribución. A su vez, impone directamente la responsabilidad al corredor por el cobro y pago de la misma.

**6. Regla XXVIII - Seguro de Líneas excedentes e informes requeridos al corredor**

Artículo 4: Renovación del seguro de líneas excedentes

*"Para la renovación de un seguro de líneas excedentes, se utilizará el procedimiento establecido en el Artículo 1 de esta Regla."*

**7. Regla XXVIII - Seguro de Líneas excedentes e informes requeridos al corredor**

Artículo 1: Circulación de riesgo

*"(A) Todo corredor de seguros de líneas excedentes, previo a la colocación de un seguro de esta clase, deberá ofrecer el riesgo que se propone colocar como tal en el modelo diseñado por la Oficina del Comisionado de Seguros para este propósito. El corredor de seguros de líneas excedentes hará dicha oferta de seguros utilizando el centro de circulación de riesgos que para este propósito establecerá y administrará la Oficina del Comisionado de Seguros."*

**8.** Saldaña sostiene que lo justo es revocar la Resolución en Reconsideración o, en la alternativa, que la decisión tenga efectos prospectivos. El Comisionado sostiene que Saldaña ha sido señalado en ocasiones anteriores sobre la posición de aplicabilidad del Capítulo 10 del Código.

**9.** La falta de pago de contribuciones conlleva que:

*"Todo corredor de líneas excedentes que **dejare de presentar su informe** sobre la cubierta de seguro de líneas excedentes y **dejare de pagar la contribución** especificada dentro del término establecido en la Sec. 1013 de este título, estará sujeto a una multa administrativa de veinticinco (25) dólares por cada día de atraso, sujeto al derecho del Comisionado de conceder una prórroga razonable para presentación y pago."* (Enfasis suplido).

El lenguaje de dicho artículo establece que son dos situaciones las que conllevan la imposición de la multa ascendente a $25.00.

**10.** Así, indicó que sólo se tardó 1,035 días en pagar la contribución para el 1997 y 305 días correspondientes al 1999. Por lo que la multa ascendería a $33,500.00 y no $125,975.00.

**11.** El Comisionado señala que si el seguro marítimo es colocado por un corredor que no sea de líneas excedentes con un asegurador no autorizado no elegible, se le cobrará el 15% de contribución de la prima suscrita según lo dispone el Artículo 10.200 del Código, 26 L.P.R.A. Sección 1020. Bajo esta opción, el asegurador no está bajo la jurisdicción del Comisionado, ya que no está autorizado hacer negocios en Puerto Rico, por lo que el Comisionado no está disponible para proteger los intereses del asegurado.