Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| CONSEJO DE TITULARES DEL CONDOMINIO SAN JORGE GARDENS<br><br>Apelada<br><br>v.<br><br>TRIPLE-S PROPIEDAD, INC., et als<br><br>Apelante | KLAN202300337 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2019CV09574 (503)<br><br>Sobre: Incumplimiento de Contrato; Cumplimiento Específico de Contrato de Seguros; Daños y Perjuicios; Mala Fe; Temeridad |
|---|---|---|

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2023.

El Tribunal de Primera Instancia ("TPI"), por la vía sumaria, dictó una sentencia parcial mediante la cual ordenó a una aseguradora satisfacer inmediatamente a la parte asegurada la cantidad que la propia aseguradora le comunicó que procedía en conexión con unas pérdidas reclamadas a raíz del paso del huracán María, quedando pendiente por adjudicar si proceden las cuantías adicionales reclamadas por el asegurado. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI porque, con el ajuste comunicado, se reconoció una deuda que advino líquida e inmediatamente exigible por la parte asegurada.

I.

En septiembre de 2019, el Consejo de Titulares del Condominio San Jorge Gardens (el "Condominio") presentó la acción de referencia, por incumplimiento de contrato, y daños y perjuicios

(la "Demanda"), en contra de Triple-S Propiedad (la "Aseguradora") y otros. El Condominio alegó ser dueño de una póliza de seguros (la "Póliza") que protege un inmueble ubicado en San Juan (la "Propiedad").

La Póliza se encontraba vigente a la fecha en que el huracán María pasó por Puerto Rico. Se alegó que, como resultado del huracán, la Propiedad sufrió daños considerables, cubiertos por la Póliza, y que el Condominio presentó una reclamación ante la Aseguradora. El Condominio aseveró que la Aseguradora incumplió con sus deberes y obligaciones bajo la Póliza, pues no ofreció una compensación justa por los daños. Además, adujo que la Aseguradora incurrió en prácticas desleales y mala fe. Se reclamó por los daños sufridos, cubiertos por la Póliza (aproximadamente $1.8 millones), y por los daños previsibles sufridos por el incumplimiento de la Aseguradora con los términos de la Póliza ($250,000).

En enero de 2022, el Condominio presentó una *Moción Solicitando Sentencia Sumaria Parcial ...* (la "Moción"). Sostuvo que, como resultado de la reclamación presentada, la Aseguradora le había enviado un *Statement of Loss,* según el cual la Propiedad sufrió daños compensables bajo la Póliza ascendentes a $245,660.13. El Condominio planteó que las cuantías indicadas en el *Statement of Loss* constituía un reconocimiento de una deuda líquida, vencida y exigible. Por no existir controversia en cuanto a dicha cuantía, el Condominio solicitó que se ordenara a la Aseguradora a emitir el pago correspondiente de inmediato.

La Aseguradora se opuso. Admitió que, en octubre de 2019, le había presentado al Condominio "el ajuste de la reclamación ... juntamente con la oferta de pago." No obstante, sostuvo que, en estas circunstancias, el TPI estaba impedido de ordenar el pago de la cuantía que la Aseguradora admitió debía al Condominio. Arguyó

que no procedía lo solicitado porque la oferta no fue aceptada por el Condominio, por lo cual no se consideraba como una deuda líquida, y que en el caso aún existían varias controversias sobre los daños sufridos por la Propiedad.

El 6 de febrero de 2023, el TPI notificó una Sentencia Parcial (la "Sentencia"); formuló las siguientes determinaciones de hechos (notas al calce omitidas):

> […]
> 5. Triple-S acusó recibo de la pérdida del Condominio San Jorge Gardens …
>
> 6. Triple-S contrató los servicios de Benj. Acosta, Inc., para realizar un ajuste de los daños sufridos por el Condominio San Jorge Gardens como consecuencia del paso del huracán María previo a la presentación de la Demanda.
>
> 7. Benj. Acosta, Inc., preparó un documento titulado *Statemento of Loss* donde se ajustó la pérdida del Condominio San Jorge Gardens en la suma de $245,660.13.

El TPI concluyó que la cantidad solicitada por el Condominio constituía una deuda líquida porque "dicho ajuste representa los daños cuantificados que no están en controversia". Razonó que el ajuste constituía un reconocimiento de deuda por la Aseguradora. Por tanto, ordenó el pago inmediato de $245,660.13, pues la misma es "líquida y exigible". El TPI aclaró que este pago parcial no representa una renuncia del Condominio a continuar con el caso sobre las cuantías adicionales que están en controversia y que no debía entenderse que se habría configurado un pago en finiquito.

El 21 de febrero, la Aseguradora solicitó la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una Resolución notificada el 20 de marzo.

Inconforme, el 18 de abril, la Aseguradora presentó el recurso que nos ocupa. Arguye que no procedía el pago ordenado porque todavía existen controversias sobre todas las partidas de la reclamación. Niega que el monto del ajuste constituya una deuda

líquida y exigible. Señala que ni los términos de la Póliza ni la legislación vigente le obligaba a pagar la cuantía que ella misma reconoció procedía bajo los términos de la Póliza. Resalta que el Condominio nunca aceptó el ajuste como uno final y que ni el Código civil ni el Código de Seguros reconoce este tipo de resolución parcial de una reclamación. Plantea que la Moción se presentó luego de expirado el término reglamentario correspondiente y que la misma no procedía porque la Moción no estaba dirigida a adjudicar de forma final ninguna de las causas de acción del Condominio.

De conformidad con lo autorizado por la Regla 7(B)(5) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 7(B)(5), resolvemos sin trámite ulterior.

II.

"[D]ebido a que la industria de los seguros está revestida del más alto interés público, es reg[lament]ada extensamente por el Estado". *Carpets & Rugs v. Tropical Reps*, 175 DPR 614, 632 (2009) (citas omitidas); véase, por ejemplo, 26 LPRA secs. 1-10377. El "negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos". *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Natal Cruz v. Santiago Negrón*, 188 DPR 564, 575 (2013). Este alto interés surge "de la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". *RJ Reynolds, supra*; *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009).

El Código de Seguros reglamenta expresamente las "prácticas comerciales en el negocio de seguros". 27 LPRA sec. 2701-2736; *Carpets & Rugs, supra; Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 442 (1997). "Uno de los renglones mayormente reg[lament]ado por el Código de Seguros de Puerto Rico" es el relacionado con "las prácticas desleales y fraudes en el negocio de

los seguros", lo cual incluye lo relativo al "ajuste de reclamaciones". *Carpets & Rugs,* 175 DPR a la pág. 632; *Comisionado de Seguros v. PRIA,* 168 DPR 659 (2006); Artículos 27.010-27.270 del Código de Seguros de Puerto Rico, 26 LPRA secs. 2701-2740. En efecto, en conexión con el manejo de reclamaciones, el Código de Seguros prohíbe un número de "actos o prácticas desleales". 26 LPRA sec. 2716a.

Por ejemplo, una aseguradora está obligada por ley a "notificar una oferta razonable". *Carpets & Rugs,* 175 DPR a la pág. 634. La investigación que precede la oferta tiene que ser "diligente", y el ajuste tiene que ser "equitativo y razonable". *Íd.* Salvo que se realice un pago total de lo reclamado, o que se deniegue totalmente la misma de forma escrita y fundamentada, una reclamación no puede ser considerada resuelta sin que medie una "oferta razonable". *Íd.* En otras palabras, las aseguradoras tienen la "obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe". *Íd.,* a la pág. 635.

Es por lo anterior que se considera que una oferta final de una aseguradora no es equivalente a una oferta de transacción, o a una postura de negociación, de las que pueden generarse en otros contextos que no están sujetos a la intensa y específica reglamentación del campo de los seguros. *Íd.* Entiéndase, **una aseguradora no puede "retractarse" de un ajuste**, a diferencia de lo que sucedería si se considerase dicho ajuste como una oferta típica dirigida a transigir o finalizar una disputa en un campo distinto al de seguros. *Íd* (énfasis suplido). Por ello, distinto a lo que ocurre en otros ámbitos del comercio, **"ante un reclamo judicial", una aseguradora no puede "den[egar] partidas que en su ajuste inicial entendió procedentes"**. *Íd.,* a la pág. 636 (énfasis suplido).

Por todo lo anterior, en *Carpets & Rugs, supra,* se resolvió que una comunicación de una aseguradora, como oferta o ajuste final

de una reclamación, era admisible en evidencia, pues no se trata de una postura de "negociación conducente [a un posible] contrato de transacción". *Carpets & Rugs*, 175 DPR a la pág. 638. Se razonó que la carta de ajuste en el referido caso no se emitió "voluntariamente en un proceso de negociación conducente al contrato de transacción, sino como parte de [la] obligación [de la aseguradora] al amparo del Código de Seguros de Puerto Rico de resolver de forma final una reclamación de un asegurado...". *Íd.,* a la pág. 639.

De forma similar, en *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, 2021 TSPR 73, 207 DPR ___ (2021), se señaló que, cuando la aseguradora envía una oferta razonable al asegurado, la misma constituye un estimado de los daños. Por ello, dicha **oferta razonable se considera "un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste"**. *Íd.,* a la pág. 16 *citando Carpets & Rugs*, 175 DPR a la pág. 635 (énfasis suplido). Por tanto, se indicó lo siguiente *Íd.* (citando *Carpets & Rugs*, 175 DPR a la pág. 639 (énfasis en el original)):

> Nótese que "en dicho documento **no existen concesiones del asegurador hacia su asegurado**, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la **reclamación y la existencia de cubierta según la póliza." Por ende, al emitir el informe de ajuste no hay una controversia bona fide entre asegurador y asegurado**.

### III.

De las anteriores normas, claramente establecidas por el Tribunal Supremo, surge que el TPI actuó correctamente al acoger la Moción y dictar la Sentencia. Veamos.

Según admite la Aseguradora, esta le comunicó un ajuste al Condominio en conexión con la reclamación de este. La Aseguradora no puede retractarse del ajuste porque el mismo se realizó como parte de su obligación de resolver la reclamación al amparo del Código de Seguros de Puerto Rico. *Carpets & Rugs*,

*supra.*  No se trata de una oferta que puede ser retirada si la otra parte no la acepta, como sucede en otros contextos en que se intenta negociar un posible contrato de transacción. *Carpets & Rugs, supra.*

Aquí, por el efecto de la reglamentación aplicable a las aseguradoras, y según resuelto en *Carpets & Rugs, supra,* y *Feliciano Aguayo, supra,* el ajuste constituye un informe objetivo producto de la obligación de la Aseguradora de investigar diligentemente la reclamación y realizar un ajuste razonable.  De ahí surge la obligación de la Aseguradora de respetar su propio ajuste y desembolsar de inmediato dicha cuantía al Condominio.

En efecto, el ajuste aquí constituye un **reconocimiento de una deuda**. *Carpets & Rugs, supra; Feliciano Aguayo, supra.* Contrario a lo planteado por la Aseguradora, la condición de deuda líquida y exigible no se afecta en lo absoluto por el hecho de que el Condominio no haya aceptado dicho ajuste como equivalente a la totalidad de su reclamación.  Lo único pertinente, en este contexto, es que la Aseguradora, luego de la correspondiente investigación, y de conformidad con sus obligaciones estatutarias, reconoció que, cuando menos, tenía la obligación, bajo los términos de la Póliza, de satisfacerle al Condominio las cuantías reflejadas en el ajuste.

A través del ajuste, la Aseguradora reconoció su obligación de pagar una cuantía específica bajo la Póliza.  De tal manera, se extinguió cualquier posible controversia entre las partes en cuanto a dicha cuantía.  Como se reconoció en *Feliciano Aguayo, supra,* como los ajustes "no [son] producto de alguna diferencia en las respectivas pretensiones de asegurador y asegurado (iliquidez de la deuda), no cumple con … la existencia de una reclamación ilíquida o sobre la cual exista una controversia *bona fide*."

De forma compatible con lo anterior, la Regla 47(7)(d) del Reglamento del Código de Seguros dispone que cuando "no exista controversia sobre uno o varios aspectos de la reclamación, se

deberá hacer el pago correspondiente, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación, siempre que el mismo se pueda efectuar sin perjuicio de ambas partes."

Tampoco la Aseguradora intenta plantear que exista alguna duda sobre su propia evaluación del monto de daños que procedía pagarse al Condominio bajo los términos de la Póliza. No puede, por tanto, evadir su obligación de honrar inmediatamente lo que reconoció, luego de realizar su propia investigación, era su deuda con el Condominio bajo los términos de la Póliza.[1]

Por otro lado, como señala la Aseguradora, lo adjudicado en la Sentencia no dispone de la totalidad de la Demanda, pues el Condominio sostiene que dicha parte le debe una cuantía mayor bajo los términos de la Póliza, además de que reclama daños por el alegado incumplimiento contractual de la Aseguradora. Es decir, aún queda pendiente por determinar si la cuantía concedida cubre la totalidad de los daños o sólo parte de estos, así como la procedencia de los daños reclamados.

No obstante, ello no impedía que, por la vía sumaria, el TPI dispusiera en cuanto a la cuantía sobre la cual no hay controversia. Ello porque esta causa de acción, al descansar sobre el reconocimiento de una deuda por la Aseguradora, es distinguible y separable de la causa de acción por incumplimiento contractual. Por tanto, el TPI podía adjudicarla mediante una sentencia parcial y final, pues así se dispone de lo que, en la práctica, constituye una causa de acción distinta, pues tiene una razón de ser diferente y distinguible de las que quedaron pendientes por adjudicarse.[2]

---

[1] Tampoco tiene apoyo alguno en el récord la etiqueta de "preliminar" que ahora le intenta colocar la Aseguradora al ajuste realizado en este caso.

[2] Contrario a lo señalado por la Aseguradora, el TPI tenía discreción para considerar la Moción, aun partiendo de la premisa de que la misma se hubiese presentado luego del término reglamentario correspondiente.

En fin, no hay razón jurídica válida para que la Aseguradora se rehúse a satisfacer inmediatamente el mínimo que ella misma ha reconocido que la parte asegurada tiene derecho a recibir, simplemente porque exista una disputa pendiente de resolución sobre la procedencia de pagos adicionales. Al contrario, abstenerse de realizar dicho pago, solo porque la parte asegurada reclama que el mismo no es suficiente, es incompatible con el entramado reglamentario del Código de Seguros y es una violación del deber de la aseguradora de cumplir de buena fe con sus obligaciones contractuales.

Concluimos, así pues, que actuó correctamente el TPI al emitir la Sentencia que obliga a la Aseguradora a satisfacer inmediatamente las cuantías reconocidas en el ajuste que ella misma realizó, por ser esta líquida y exigible. Este era el único curso de acción compatible con el Código de Seguros y su reglamentación, y con lo establecido en *Carpets & Rugs, supra,* y *Feliciano Aguayo, supra.*

IV.

Por todo lo anteriormente expuesto, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rivera Torres disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| CONSEJO DE TITULARES DEL CONDOMINIO SAN JORGE GARDENS<br><br>Apelada<br><br>v.<br><br>TRIPLE-S PROPIEDAD, INC., et als<br><br>Apelante | KLAN202300337 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2019CV09574 (503)<br><br>Sobre: Incumplimiento de Contrato; Cumplimiento Específico de Contrato de Seguros; Daños y Perjuicios; Mala Fe; Temeridad |
|---|---|---|

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**VOTO DISIDENTE
DEL JUEZ WALDEMAR RIVERA TORRES**

En San Juan, Puerto Rico, a 28 de abril de 2023.

Respetuosamente disiento de la mayoría del Panel debido a que, según surge de los hechos del caso, Triple-S nunca ofreció al Consejo de Titulares un pago parcial o adelanto ni mucho menos existe una aceptación del *Statement of Loss* por el asegurado. Elementos que se deben configurar para que aplique el Artículo 12.166 de la Ley núm. 243-2018, 27 LPRA sec. 2716f.

A su vez, y al tenor de dicho precepto, no será procedente la emisión de pago parcial alguno sobre aquellas partidas que estén en controversia. Si el Consejo de Titulares cuando se le remitió el *Statament of Loss*, allá para el 29 de octubre de 2019, no lo aceptó, **ello implica que aún todas las partidas y las cuantías allí especificadas están en disputa**. Por lo tanto, no puedo avalar el proceder de la parte apelada que ahora en noviembre de 2022, mediante el petitorio de resolución sumaria, pretenda hacernos

creer que dicho ajuste inicial constituye una suma líquida y exigible porque es una cantidad de daños reconocidos voluntariamente por Triple-S.

Respecto a dicho argumento debo apuntar, además, que el reconocimiento de la existencia de una deuda se concreta luego de que la aseguradora realiza su investigación y ajuste final. Mientras no se realice tal proceso, las cantidades estimadas carecen de finalidad y certeza. Esto, máxime si el asegurado no está conforme con el monto preliminar informado. Sobre este punto, debo señalar que el caso ante nuestra consideración es distinguible a los hechos acaecidos en *Carpets & Rugs v. Tropical Reps*, 175 DPR 615 (2009), ya que en este la aseguradora le envió al reclamante una carta informando "los estimados de daños a los que había llegado y las cantidades que estaba dispuesta a pagar" y este "aceptó parcialmente el ajuste realizado". Lo que no ocurre en el casode epígrafe, debido a que la parte apelada nunca hizo un reconocimiento parcial o total de la oferta.

Asimismo, la legislación regente expone diáfanamente que la suma ofrecida, luego del correspondiente ajuste de una reclamación, constituye el reconocimiento de la deuda en cuanto a las partidas reclamadas y cubiertas por la póliza. Por tanto, es forzoso concluir que luego de realizado dicho proceso es que podemos hablar de una cuantía exigible, **en caso de ser aceptada por el asegurado**. En *Com. Seg. P.R. v. Antilles Ins. Co.,* 145 DPR 226 (1998), la más alta *Curia* resolvió que una reclamación se entiende resuelta una vez la empresa aseguradora notifica a su asegurado el ajuste final de la reclamación que le fue presentada.

Por su parte, el Código de Seguros establece que una aseguradora no puede retractarse del ajuste realizado en cumplimiento de los deberes que le impone la legislación. Esto en referencia al ajuste realizado, luego de la investigación y al proceso

interno que lleva a cabo la aseguradora en las reclamaciones presentadas. En este punto, precisa advertir que el informe en cuestión constituyó un **ajuste preliminar** encomendado por la apelante para rebatir la valoración sobre daños reclamada por la parte apelada. Lo que no conlleva un pago automático sin más.

De igual manera, y relacionado a lo antesdicho, no puedo obviar que Triple-S, en su oposición a la petición de sentencia sumaria, advirtió que en la demanda el Consejo de Titulares reclamó daños por $1,840,817.39, pero en la reclamación judicial sometió un informe donde se indicó que el valor de estos era $1,057,484.38. Lo que a su entender, constituye una admisión de sobrevaloración en su reclamación y un fraude a tenor con los términos y condiciones de la póliza. En este sentido, resulta forozo concluir que todas las partidas reclamadas están siendo cuestionadas. Recordemos que en *Carpets & Rugs v. Tropical Reps,* supra, el más alto foro decretó que un asegurador no le es permisible retractarse del ajuste que envía a su asegurado salvo fraude del reclamante.

Por último, resulta menester señalar que en el presente caso no ha concluido el descubrimiento de prueba. Por lo que, como parte de ese proceso, no cabe duda de que las partes trabajan en la corroboración de los daños reales y el valor razonable de estos. Es decir, existe controversia en cuanto al monto que finalmente deberá ser pagado por la aseguradora, de probarse la pérdida que se alega y de estar cubierta por la póliza. A estos efectos, reitero que resulta evidente que no estamos ante cantidades que puedan ser consideradas como finales, líquidas y exigibles. Como bien expresó la parte apelante en su escrito "**El hecho de que continúa el litigio sobre el grado, extensión, y alcance de los daños de dichas**

**partidas [incluidas en el ajuste] en sí mismo hace que la deuda no pueda ser líquida y exigible.**"[3]

Por lo cual, resultaría prematuro el compeler al pago de una cantidad sobre la cual ambas partes mantienen una disputa, más aún cuando la misma es susceptible de variación a medida que se continúe con el descubrimiento de prueba entre las partes. **Recalco que es precisamente la discrepancia en cuanto a la cuantía a pagar por la aseguradora, lo que provoca la controversia**. Por ello, entiendo que el foro primario incidió al ordenar el pago de la cantidad estimada mediante el *Statement of Loss*, que no representa una carta de oferta final de la aseguradora.[4]

Por los fundamentos antes expuestos, revocaría la *Sentencia Parcial* apelada.


                                WALDEMAR RIVERA TORRES
                                JUEZ DE APELACIONES

---

[3] Véase la *Apelación Civil*, a la pág. 18.  Énfasis en el original.
[4] Advierto que en la *Sentencia Parcial* apelada el TPI expresó que el Consejo de Titulares no presentó la Carta de Ajuste.