ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| STEVEN L. MEDINA MENDOZA<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO<br><br>Recurrida | KLRA202400212 | *Revisión* procedente del Negociado de la Policía de Puerto Rico<br><br>Caso Núm.: SAIC-NILIAF-DRAEL-5-952<br><br>Sobre: Revocación Licencia de Armas Número 72413 |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece Steven L. Medina Mendoza (en adelante recurrente y/o señor Medina Mendoza) mediante un recurso de *Revisión Judicial*, para solicitarnos la revisión de la *Resolución* emitida por el Negociado de la Policía de Puerto Rico (en adelante, parte recurrida y/o Negociado) el 29 de diciembre de 2023, archivada en autos el 10 de enero de 2024 y notificada el 28 de febrero de 2024.[1] Mediante la *Resolución* recurrida el Negociado sostuvo la revocación de la Licencia de Armas del señor Medina Mendoza.

Por los fundamentos que expondremos, se *revoca* la *Resolución* recurrida.

**I**

El 23 de febrero de 2020, el NPPR emitió el comunicado SAOC-CA-2-107-01-045 informando *Ocupación de Licencia de Arma #72413 del Sr. Steven L. Medina Mendoza.*[2] La licencia de armas fue ocupada el 5 de noviembre de 2020, por el Sargento Alex Novoa

---

[1] Apéndice del recurso, a las págs. 3-9.
[2] Expediente administrativo, a la pág. 1.

Número Identificador

SEN2024_____

González (en adelante, Stgo. Novoa González) por motivo de la orden de protección ARL2842020-00833, al amparo de la Ley Contra el Acecho en Puerto Rico.[3] A dicho caso le asignaron la querella #2020-2-107-07298. Dicha licencia había sido expedida el 2 de febrero de 2016 y expiraba el 28 de febrero de 2021.[4]

El 23 de febrero de 2021, se enviaron a decomisar cuatro (4) armas de fuego que le fueron ocupadas al señor Medina Mendoza por parte del Sgto. Novoa González.[5] El motivo para ocupar y enviar a decomisar las armas fue la querella #2020-2-107-07298, al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica.[6]

El 9 de marzo de 2021, el NPPR interpuso una *Solicitud Investigación Ley 168.*[7] Se expuso que, se debía investigar si el señor Medina Mendoza tenía conducta constitutiva de los delitos expresados en el Artículo 2.09 de la Ley Núm. 168-2019.[8] Así, las cosas, se ordenó investigar lo relacionado al comunicado SAOC-CA-2-107-01-045 y la querella #2020-2-107-07298.

El 22 de abril de 2021, el TPI emitió una *Resolución* en la cual decretó el archivo del caso ARL2842020-00833, bajo el fundamento de que no se daban los elementos para expedir un remedio.[9] Por su parte, el 29 de junio de 2021, el TPI emitió una *Resolución* en la cual archivó el caso ARL2842021-01119 debido al desistimiento libre y voluntario del peticionario, el señor Kevin Rivera Alicea.[10]

El 10 de noviembre de 2021, el señor Medina Mendoza firmó el documento titulado *Advertencias al Ciudadano Investigado Sobre*

---

[3] Ley Contra el Acecho en Puerto Rico, Ley Núm. 284 de 21 de agosto de 1999, según enmendada, 33 LPRA § 4013 nota *et seq.*
[4] Expediente administrativo, a la pág. 10.
[5] *Id.,* a las págs. 6-9.
[6] Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA § 601 nota *et seq.*
[7] Expediente administrativo, a la pág. 13.
[8] Ley de Armas de Puerto Rico de 2020, Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, 25 LPRA § 462h, Art. 2.09.
[9] Expediente administrativo, a la pág. 14.
[10] *Id.,* a la pág. 40.

*su Licencia de Armas de Fuego de PR*.[11] Ese mismo día, se le realizó la *Entrevista al Ciudadano Investigado,* la cual este firmó.[12]

El 17 de noviembre de 2021, el señor Medina Mendoza presentó un *Testimonio de Autenticidad,* en el cual solicitó que se le devolvieron las cuatro (4) armas de fuego ocupadas.[13] Señaló que, el 10 de noviembre de 2021, compareció a realizar las gestiones para que se le devolvieran las armas.

El 1 de diciembre de 2021, el NPPR entrevistó a los señores Javier Maldonado Durán, Kevin Rivera Alicea, Waldemar Bonilla Traverso (señor Bonilla Traverso) y al Stgo. Novoa González.[14] El resultado las entrevistas arrojó que era desfavorable que el señor Medina Mendoza tuviese una licencia de armas.

El 21 de diciembre de 2021, el NPPR emitió un comunicado de los *Resultados Sobre la Investigación del Sr. Steven L. Medina Mendoza, Lic. Armas 72413* a solicitud del comunicado SAIC-NILIAF-DRAEL-5-73.[15] En dicho comunicado se solicitó que se investigara la querella 2020-2-107-07298, relacionado a la ARL2842020-00833, conforme al Artículo 2.02 (C).[16] Se expuso que, en el transcurso de la investigación, en el perfil de la División de Registro de Armas de la Policía de Puerto Rico, se reflejaban cinco (5) armas de fuego, pero el Stgo. Novoa González solo pudo ocupar cuatro (4). La quinta arma en controversia era un Rifle Mossberg, Cal. 22, Mod. 802, Ser. HHB028914. Ante la negativa del señor Medina Mendoza de que dicha arma le pertenecía, se le confrontó con el reporte de arma del señor Christian H. González Casere, para la fecha del 5 de abril de 2010. Según surge del reporte, en dicha fecha se le traspasó el arma al señor Medina Mendoza. Así, pues, el

---

[11] Expediente administrativo, a la pág. 4.
[12] *Id.,* a las págs. 41-46.
[13] *Id.,* a las págs. 48-49.
[14] *Id.,* a las págs. 51-56.
[15] *Id.,* a las págs. 57-59.
[16] *Id.,* a la pág. 57.

señor Medina Mendoza aceptó que el arma estuvo en su poder. Debido a las versiones contradictorias provistas por el señor Medina Mendoza, el Stgo. Novoa González consultó con fiscalía respecto a la radicación de cargos por el Artículo 269 de Perjurio del Código Penal de Puerto Rico.[17] Por consiguiente, se hizo una recomendación desfavorable, ya que se mantenía una investigación abierta con relación a perjurio y debido a que las cuatro (4) entrevistas realizadas no lo favorecían.

El 30 de diciembre de 2021, el señor Medina Mendoza recibió una carta SAIC-NILIAF-DRAEL-5-952 del NPPR.[18] En dicha carta se le indicó la revocación de su Licencia de Armas número 72413 y su Permiso de Tiro al Blanco número 102240, conforme al Artículo 2.09 de la Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, Ley de Armas de Puerto Rico de 2020 (en adelante, Ley Núm. 168-2019).[19] Dicha licencia y permiso habían sido expedidos bajo la derogada Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, Ley de Armas de Puerto Rico (en adelante, Ley Núm. 404-2000).[20] En el caso del Permiso de Tiro al Blanco, este había sido expedido, igualmente, el 2 de febrero de 2016, y expiraba el 28 de febrero de 2021. En la carta se esbozó que una investigación realizada resultó desfavorable, ya que arrojó que el señor Medina Mendoza no cumplía con los requisitos establecidos por ley. Además, se le informó de su derecho a solicitar reconsideración dentro de los próximos quince (15) días naturales contados a partir del recibo de la notificación. Del expediente administrativo surge que la determinación había sido tomada en la misma fecha que indicaba

---

[17] 33 LPRA § 5362, Art. 269.
[18] Apéndice del recurso, a la pág. 1. Expediente Administrativo, a la pág. 63.
[19] Ley de Armas de Puerto Rico de 2020, Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, 25 LPRA § 462h, Art. 2.09.
[20] Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, 25 LPRA § 455 nota, Edición de 2016 *et seq.*

la carta.[21] La carta le fue notificada al señor Medina Mendoza el 11 de enero de 2022 y fue recibida por este el 13 de enero 2022.[22]

El 26 de enero de 2022, se recibió en la Oficina de Asuntos Legales del NPPR una solicitud de vista administrativa.[23]

El 10 de octubre de 2023, la Oficina de Asuntos Legales del NPPR, Sala del Oficial Examinador, emitió una *Citación Oficial de la Parte Peticionaria.*[24] A través de esta, se citó al señor Medina Mendoza ante el Oficial Examinador en relación con una Vista Administrativa solicitada por este. El señor Medina Mendoza debía comparecer el 2 de noviembre de 2023. Además, se citaron como testigos a el Agente Carlos A. Maldonado Figueroa (en adelante, Agte. Maldonado Figueroa) y a la Sargento Ana De Jesús Rivera.[25]

La vista se celebró el 2 de noviembre de 2023. Por el NPPR compareció el Agte. Maldonado Figueroa, adscrito a la División de Investigaciones de Licencias de Armas de Fuego, y el Stgo. Novoa González.

El 9 de noviembre de 2023, se emitió el *Informe del Oficial Examinador.*[26] En dicho informe se emitieron las primeras catorce (14) determinaciones de hechos que constan en la *Resolución.* Del testimonio del Stgo. Novoa González surgió que el señor Medina Mendoza no tenía récord criminal. Su representante legal presentó un Certificado Negativo de Antecedentes Penales expedido el 25 de marzo de 2022. Por su parte, del testimonio del Agte. Maldonado Figueroa surgió que el señor Bonilla Traverso también había radicado una querella contra el señor Medina Mendoza. Sin embargo, dicha querella fue declarada No Ha Lugar por el TPI.

---

[21] Expediente administrativo, a las págs. 61-62.
[22] *Id.,* a las págs. 64 y 88-89.
[23] *Id.,* a la pág. 73.
[24] Apéndice del recurso, a la pág. 2. Expediente administrativo, a la pág. 72.
[25] Expediente administrativo, a las págs. 70-71.
[26] *Id.,* a las págs. 73-81.

Según se desprende del Informe, el caso debía ser evaluado bajo la Ley Núm. 404-2000, toda vez que la licencia del señor Medina Mendoza no había sido renovada bajo la Ley Núm. 168-2019. En lo concerniente a la investigación en curso sobre el señor Medina Mendoza, se expresó que fue el día de este Informe que el Agte. Maldonado Figueroa advino en conocimiento de que el Sgto. Novoa González había finalizado la misma. En fin, se declaró No Ha Lugar la petición del señor Medina Mendoza y se expresó que:

> A la fecha de este informe la licencia de armas del peticionario bajo la Ley 404, se encuentra vencida desde el 28 de febrero de 2021, lo cual lo inhabilita para que se le devuelva lo ocupado, toda vez que este tiene que solicitar su licencia bajo las disposiciones de la Ley 168 "Ley de Armas de Puerto Rico de 2020".

El 29 de diciembre de 2023, archivada en autos el 10 de enero de 2024, el NPPR emitió la *Resolución* recurrida.[27] En dicha *Resolución*, se indicó que se notificara copia de esta al recurrente y a su representante legal. Según se desprende, la misma fue notificada al representante legal del recurrente el 10 de enero de 2024. Sin embargo, aunque no se certificó que se hubiese notificado copia de esta al recurrente, surge de los autos que se hizo el 23 de febrero de 2024.[28] Mediante la *Resolución* emitida, el NPPR declaró No Ha Lugar la petición instada por el señor Medina Mendoza y determinó que no se otorgara la licencia solicitada.

Como parte de su *Resolución*, el NPPR emitió quince (15) determinaciones de hechos:

1. El Sr. Javier Maldonado Durán solicitó contra el peticionario una orden de protección al amparo de la Ley de Acecho. El tribunal expidió la orden de protección ARL2842020-00833.
2. El 5 de noviembre de 2020 el Sgto. Alex Novoa González placa 8-12864, diligenció la orden de protección al peticionario y le ocupó cuatro (4) armas de fuego y la licencia de armas número 72413.
3. En el perfil del peticionario de la División de Registro de Armas, figura con cinco (5) armas de fuego.

---

[27] Apéndice del recurso, a las págs. 3-9. Expediente administrativo, a las págs. 82-87.
[28] Apéndice del recurso, a la pág. 9.

4. El Sgto. Novoa González, cuestionó al peticionario sobre la quinta arma, un rifle Mossberg, calibre 22, modelo 802, con la serie HHB028914 y este le manifestó que no posee y nunca ha poseído dicha arma.

5. El Sgto. Novoa González, redactó Informe de Otros Servicios con número de querella 2020:2-107:007298, informando el diligenciamiento de la orden de protección, la ocupación y lo expresado por el peticionario relacionado a la quinta arma de fuego.

6. El Sr. Kevin Rivera Alicea, solicitó contra el peticionario una orden de protección al amparo de la Ley de Asecho. El tribunal expidió la orden de protección ARL2842021-01119.

7. El 22 de abril de 2021, se celebró la vista final de la orden de protección ARL2842020-00833, donde la juez Michelle Camacho Nieves, determinó archivar la misma, por no haber los elementos para expedir un remedio.

8. El 29 de junio de 2021, se celebró la vista final de la orden de protección ARL2842021-01119, donde el juez Gabriel Portell Maldonado, determinó archivar la misma, por desistimiento libre y voluntario del Sr. Rivera Alicea.

9. El Agte. Carlos A. Maldonado Figueroa placa 289997, adscrito a la División de Investigaciones de Licencias y Permisos de Armas de Fuego, realizó una investigación sobre la ocupación de las armas de fuego.

10. El peticionario en entrevista con el Agte. Maldonado Figueroa, manifestó que el rifle Mossberg, calibre 22, modelo 802, con la serie HHB0289914, no le pertenecía.

11. El Agte. Maldonado Figueroa, confrontó al peticionario con el traspaso de dicha arma y le orientó sobre el deber de notificar lo que ocurrió con dicha arma de fuego.

12. El Agte. Maldonado Figueroa, realizó cuatro (4) entrevistas los cuales no recomendaron favorablemente al peticionario para la devolución.

13. El Agte. Maldonado Figueroa, recomendó desfavorable al peticionario para la devolución de la licencia y de las armas ocupadas, ya que al momento de la investigación se encontraba pendiente una investigación por parte del Sgto. Novoa González.

14. El Sgto. Novoa González, consultó el caso en la Fiscalía de Arecibo, donde el fiscal Ismael Ortiz, indicó no radicar cargos y continuar con el trámite administrativo de la Policía.

15. La licencia de armas del peticionario fue expedida el 2 de febrero de 2016 y se encuentra vencida desde el 28 de febrero de 2021.

Se le advirtió al señor Medina Mendoza sobre su derecho a solicitar reconsideración dentro de los veinte (20) días desde la fecha de archivo en autos de la notificación de la *Resolución.*

El 14 de marzo de 2024, el señor Medina Mendoza presentó una *Moción de Reconsideración.*[29] Señaló que, las conclusiones y determinaciones de derecho citadas en la *Resolución,* no tenían cabida en ninguna de las categorías enumeradas en el Artículo 2.09 de la Ley Núm. 168-2019, para que se le pudiese revocar la licencia o para que no se le expidiera la licencia de armas.[30] Expuso que, la incautación de las armas el 9 de noviembre de 2020, no estuvo relacionada a la comisión de un delito ni con el uso de estas. Además, alegó que cumplía con todos los requisitos establecidos en la Ley Núm. 168-2019. Destacó que en la *Resolución* no se expuso con cuál de los incisos de la ley no cumplía el recurrente o cuál de ellos daba lugar a la revocación de la licencia de armas y a no entregarle las mismas. En lo concerniente a las determinaciones de hecho número 13 y 14, indicó que durante la vista administrativa el Stgo. González declaró que había terminado la investigación y que había consultado con varios fiscales de la región de Arecibo y todos recomendaron no radicar asunto alguno. Solicitó que se reconsiderara la determinación y se ordenara la devolución de las armas y de la licencia. El NPPR no se expresó en cuanto a la *Moción de Reconsideración,* por lo cual se entiende rechazada de plano.

Inconforme, el 25 de abril de 2024, el señor Medina Mendoza presentó ante esta Curia un recurso de *Revisión Judicial* en el cual esbozó la comisión de cinco (5) errores por parte del NPPR:

**Primer Error:**
Erró el NPPR al revocar la Licencia de Armas del Peticionario cuando solo investigó a testigos que solicitaron órdenes de protección que no prosperaron en su contra, sin entrevistar a nadie más que sugirió sin tener prueba alguna que justificara tal acción por parte de la Policía.

---

[29] Apéndice del recurso, a las págs. 10-14. Expediente administrativo, a las págs. 90-92.
[30] Ley de Armas de Puerto Rico de 2020, Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, 25 LPRA § 462h, Art. 2.09.

**Segundo Error:**
Erró el NPPR al revocar la Licencia de Armas del Peticionario bajo lo dispuesto en el Art. 2.11 de la Ley de Armas de 2000.

**Tercer Error:**
Erró el NPPR al revocar la Licencia de Armas del Peticionario bajo lo dispuesto en el Art. 2.12 de la Ley de Armas de 2000.

**Cuarto Error:**
Erró el NPPR al revocar la Licencia de Armas del Peticionario bajo lo dispuesto en el Art. 2.13 de la Ley de Armas de 2000.

**Quinto Error:**
Erró el NPPR al llevar a cabo un proceso administrativo cuando el mismo es uno inconstitucional y así debe ser declarado por este Tribunal de Apelaciones.

Por su parte, el 30 de mayo de 2024, compareció la parte recurrida, por conducto de la Oficina del Procurador General mediante *Escrito en Cumplimiento de Resolución*. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

**II**

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha sostenido que, el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[31] El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[32] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[33] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que

---

[31] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[32] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[33] *Asoc. Condómines v. Meadows Dev., supra.*

ejerzan sus funciones conforme la ley y de forma razonable.[34] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[35] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho.[36]

El Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[37]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[38] Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[39] Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben

---

[34] *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. ARPe*, 172 DPR 254, 264 (2007).

[35] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).

[36] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).

[37] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24 (1996).

[38] *Rolón Martínez v. Caldero López, supra*; *Asoc. Fcias. v. Caribe Specialty et al. II., supra*.

[39] *Rolón Martínez v. Caldero López, Id.*; *Asoc. Fcias. v. Caribe Specialty et al. II., Id.*

respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[40] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[41] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[42]

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[43] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[44] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[45] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[46] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[47]

---

[40] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[41] *Id.*
[42] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe, supra.*
[43] *Batista, Nobre v. Jta. Directores, supra,* 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999).
[44] *Id.*; *Otero v. Toyota,* 163 DPR 716, 728 (2005).
[45] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[46] *Hilton v. Junta de Salario Mínimo,* 74 DPR 670, 687 (1953).
[47] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[48] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[49] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[50] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[51] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[52] Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[53]

Por otro lado, resulta necesario destacar que para que el foro apelativo pueda ejercer su función de revisión judicial, es esencial que las agencias administrativas expongan de manera clara sus determinaciones de hechos y las razones para llegar a su determinación final, incluyendo hechos básicos de los cuales, a través de un proceso de razonamiento e inferencia, se derivan de

---

[48] *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[49] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).
[50] *Otero v. Toyota, supra.*
[51] *García Reyes v. Cruz Auto corp., supra*, 894.
[52] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[53] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

aquellos.[54] Es decir, el dictamen debe reflejar que dicho organismo ha considerado y resuelto los conflictos de prueba, y sus determinaciones deben de incluir tanto los hechos probados como los que fueron rechazados.[55] Consecuentemente, los fundamentos de una decisión no pueden ser *pro forma*.[56] Estos deben reflejar que la agencia cumplió con su obligación de evaluar y resolver los conflictos de prueba del caso ante su consideración.[57]

En consonancia, nuestro Más Alto Foro ha establecido que las determinaciones de hechos en los dictámenes finales de las agencias administrativas, "deben ser lo suficientemente definidas para poner a las cortes en posición de revisar inteligentemente la decisión [del organismo administrativo] y determinar si los hechos tal y como [éste] los encontró probados... ofrecen una base razonable para [su decisión]".[58] En cuanto a las conclusiones de derecho, "la agencia no puede limitarse a 'recitar' o a repetir frases generales que aparecen en [sus reglamentos o en su ley orgánica] como único fundamento para su decisión".[59] Así pues, en conclusión, las determinaciones de hechos y las conclusiones de derecho que forman parte de las resoluciones finales de las agencias administrativas no pueden ser *pro forma*.

### III

El señor Medina Mendoza presentó ante esta Curia un recurso de *Revisión* Judicial en el cual esbozó que el NPPR cometió cinco (5) errores. El recurrente alega que erró el NPPR al revocar su Licencia de Armas: (i) cuando solo investigó a testigos que solicitaron órdenes de protección que no prosperaron en su contra y sin haber entrevistado a personas sugeridas por el recurrente, esto sin tener

---

[54] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437-438 (1997).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Misión Industrial v. Junta de Salario Mínimo*, 146 DPR 64, 152 (1998).
[59] *Id.*

prueba alguna que justificara tal acción por parte de la Policía; (ii) bajo lo dispuesto en los Artículos 2.11, 2.12 y 2.13 de la Ley Núm. 404-2000;[60] y, (iii) al llevar a cabo un proceso administrativo cuando el mismo es uno inconstitucional.   Por su parte, la recurrida, por conducto de la Oficina del Procurador General, nos invita a concluir que debe confirmarse la *Resolución* recurrida. Adelantamos que no nos convence la postura del Procurador General. Veamos.

La licencia de armas número 7243 del señor Medina Mendoza le fue ocupada junto a cuatro (4) armas de fuego. Durante la investigación, en el perfil de la División de Registro de Armas de la Policía de Puerto Rico se reflejaban cinco (5) armas de fuego pertenecientes al recurrente, pero como indicamos solo le ocuparon cuatro (4). De ahí, el 30 de diciembre de 2021, el recurrente recibió una misiva en la cual le informaron sobre la revocación de la susodicha Licencia de Armas y su Permiso de tiro al Blanco número 102240, conforme al Artículo 2.09 de la Ley Núm. 168-2019.

Posteriormente, se rindió el *Informe del Oficial Examinador.* Cabe destacar que, en el informe se indicó que el caso debía ser evaluado bajo la Ley Núm. 404-2000, toda vez que la licencia del señor Medina Mendoza no había sido renovada bajo la Ley Núm. 168-2019. Una vez evaluado, se declaró No Ha Lugar la petición del señor Medina Mendoza. De ahí, el NPPR emitió la *Resolución* recurrida en la cual denegó la solicitud del recurrente. Conviene mencionar que, el NPPR no se expresó en cuanto a la moción de reconsideración instada por el recurrente, por lo cual se entiende rechazada de plano.

Ahora bien, en nuestra función como Tribunal intermedio, de una lectura de la *Resolución* recurrida revela que la misma tiene serias deficiencias que limitan nuestra función revisora.  Nótese que,

---

[60] Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, 25 LPRA § 456j – 456l, 2.11 – 2.13.

la referida *Resolución,* aun cuando contiene determinaciones de hechos, al revisar las conclusiones de derecho incluidas vemos que las mismas son prácticamente una transcripción de ciertos artículos de la Ley 404-2000. Apuntamos que algunos de estos artículos fueron subrayados en algunas de sus partes. Subsiguientemente, el foro recurrido dispuso en la parte VI de la *Resolución* recurrida lo siguiente:

> Examinadas las determinaciones de hechos y conclusiones de derecho antes expuestas y conforme a la Ley Núm. 168 de 11 de diciembre de 2019, conocida como la nueva "Ley de Armas de Puerto Rico de 2020", hemos determinado declarar NO HA LUGAR la petición y que no se otorgue la licencia solicitada.[61]

Cónsono al marco legal aplicable a este caso, cuando una agencia emite una determinación final tiene el deber de cumplir con los postulados de la LPAUG y la jurisprudencia interpretativa. Quiérase decir que la agencia debe formular determinaciones de hechos suficientemente definidas que puedan permitirle a este Tribunal ejercer nuestra función judicial. En el caso ante nuestra consideración, la NPPR incluyó quince (15) determinaciones de hechos probados. Conforme a nuestro ordenamiento jurídico, la agencia también tiene el deber de formular determinaciones de hechos suficientemente definidas que, de igual forma, permitan que los tribunales ejerzan su función de revisión judicial. Sin embargo, en cuanto a las conclusiones de derecho que emita la agencia, **deben ser el resultado de un análisis que interprete las normas legales aplicables a la luz de los hechos probados**. Falló la NPPR al no cumplir con lo anterior. Insistimos, una agencia administrativa no puede simplemente sostener una determinación con fundamentos *pro forma.* Peor aún, una agencia no puede descargar su obligación con una *Resolución* y que simplemente rece los artículos de ley, sin

---

[61] Apéndice del recurso, a la pág. 7. Expediente Administrativo, a la pág. 86.

más.[62] Tras haberse apartado el NPPR de los postulados más básicos del debido proceso de ley y de la LPAUG, disponemos revocar la *Resolución* recurrida y le ordenamos que emita una que cumpla con los postulados de la LPAUG, específicamente, para que incluya un análisis adecuado de las disposiciones de la Ley aplicable al caso y cuáles juzga que el recurrente violó. Recordemos que la última instancia judicial ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[63]

**IV**

Por los fundamentos que anteceden, se *revoca* la *Resolución* recurrida. Se devuelve el caso al NPPR para la continuación de los procedimientos, cónsono con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[62] *Misión Industrial v. Junta de Salario Mínimo, supra.*
[63] *Asoc. Vec. Altamesa Este v. Municipio de San Juan, supra.*